The Commonwealth of Pennsylvania ex rel., George A. Kelly et al., a Committee of Citizens unincorporated, known and styled " The Provisional Committee of the Lake Erie and Ohio River Ship Canal " *v.* The City of Pittsburg and Henry I. Gourley, Controller of the City of Pittsburg, Appellants.

*Municipalities—Constitutional law—Appropriation of money or loan of credit by municipality.*

A city may appropriate money to a committee of private citizens appointed by the chamber of commerce and ratified by city councils to defray the expenses of having surveys for a ship canal made, and for securing information as to whether such a canal would be practicable, and would be a benefit to the city. Such an appropriation does not violate article 9, section 7, of the constitution, which forbids a municipality " to appropriate money or loan its credit to any corporation, association, institution, or individual."

Argued Oct. 26, 1897. Appeal, No. 67, Oct. T., 1897, by defendants, from order of C. P. No. 2, Allegheny Co., April T., 1897, No. 123, awarding peremptory mandamus. Before STER-

RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition for mandamus.

The facts and sufficient of the allegations of the petition and answer appear by the opinion of the lower court, WHITE, J., which was as follows:

This case comes before us on an amicable submission, to decide the legal questions involved. The original petition, answer and demurrer, were filed the same day, January 22, 1897. At the hearing certain facts seemed to be necessary to a proper decision of the case, and the relators were allowed to amend. The amendment, answer thereto and demurrer, were filed at the same time, March 13, 1897, and the case submitted for final disposition.

The relators were "The Provisional Committee of the Lake Erie and Ohio River Ship Canal," appointed in pursuance of a resolution of the board of directors of the chamber of commerce of the city of Pittsburg, passed July 2, 1894, for determining the practicability of such a canal, and the benefits and advantages that would accrue from it to the trade and industries of Pittsburg, and if found such, to secure a corporation of private capital to undertake it, or the national government to undertake it. Pursuant thereto the committee raised, by voluntary subscriptions, $29,000, which were expended in the employment of engineers, gathering statistics, etc., and were unanimously of opinion that the proposed canal "was entirely practicable and feasible, and would be of inestimable value to the city of Pittsburg and its citizens, by increasing the trade and commerce of said city." Finding that the fund voluntarily subscribed was not sufficient to complete their work, and "to remove all doubts as to the practicability of the project, and to establish clearly its great utility to the commerce, trade and industries of the city of Pittsburg," they wished "to employ impartial experts to test and examine the work and to complete the work in the most perfect detail," and for that purpose appeared before the councils of the city, "and gave a full explanation and history of their work done, and stated that the money requested was to be used by the committee in completing their work in the most

perfect and detailed manner," and the necessity and great utility of such a canal for the people of Pittsburg. Thereupon the councils of the city unanimously passed an ordinance, July 11, 1895, which was duly approved by the mayor, for the appropriation of $10,000 out of the revenues of the city for the fiscal year, commencing February 1, 1896, " to be expended solely for the purpose of the provisional committee of the Lake Erie and Ohio River Ship Canal, a public improvement and highway designed to promote the commercial interests of the city, the sum, or so much thereof as shall be required, shall be paid by the controller upon proper vouchers and affidavits presented and made by the chairman of said committee, to the treasurer thereof, and shall be charged to appropriation No.    ."

The relators say that, "relying upon the faith of said ordinance and appropriation, they subsequently entered into contracts, and expended in carrying out the work contemplated, requiring the sum of $7,500 ($5,000 yet remaining unpaid), $2,500 being advanced by the relators, and that in addition thereto, some $1,500 will be needed for publishing the reports, etc., making a total of $9,000, which will be necessary to finish the work." That on application to H. I. Gourley, the controller, for the certificate for a warrant for the appropriation, he refused to issue the same, for reasons stated in his letter of June 5, 1896, addressed to the chairman of the committee, in which he says : " I very reluctantly decline to issue the certificate. . . . The conclusion which I am compelled to reach is based on a provision of the state constitution, which I am advised prevents the use of public money for the purpose designed. I can see no way, at the present time, by which the money can be placed in the possession of your committee."

At the argument on the original petition, answer and demurrer, it was further urged that the relators had not presented vouchers and affidavits, as required by the ordinance of July, and also that all appropriations, under the general ordinances of the city, must be made at the beginning of the fiscal year, in January or February. It was claimed by the relators that they had given or would give the vouchers, etc., and also that in the annual appropriation ordinance of February, 1896, this specific sum of $10,000 was included. The relators were permitted to amend on these points. The amendment filed March 13, 1897,

showed a compliance as to the vouchers and affidavits, and also the general appropriation ordinance of February, 1896, containing this item: " 47.   Lake Erie Ship Canal, $10,000." The ordinance is headed : " Appropriations for 1896.   The following sums of money are hereby specifically appropriated for the purposes hereinafter set forth."

In the answer of the controller to the amendment, he denies that the $10,000 in the ordinance of February, 1896, should be paid to the relators, because it is " an appropriation made to and for a different and distinct body entirely, namely, the Lake Erie Ship Canal."   If the answer raised a question of fact it would have to be referred to a jury.   But I do not understand that the controller raises a question of fact, but a legal question upon the words of the ordinance.   In considering this question we must take into consideration all the circumstances.   It is not alleged that there is any corporation or association by the name of the "Lake Erie Ship Canal."   If there is none such, then the appropriation could not have been intended for a nonentity.   The appropriation in the ordinance of February, 1896, was manifestly intended to refer to the ordinance of July, 1895.   That ordinance did not appropriate the money at that time, for it expressly provided it shall be paid out of the revenues of 1896.   The ordinance of February, 1896, was intended to carry out the ordinance of July, 1895.   It is for the precise sum, and there is no appropriation to the provisional committee. The object is the same in both ordinances.   It was suggested in the argument that possibly the city might have to pay the sum twice.   Perhaps that was a good reason for raising the question.   But certainly the city is in no danger.   There is no body now in existence that can claim this money, as the " Lake Erie Ship Canal."   No doubt if the money be paid to the relators under the order of court the city will be fully protected, especially as no body or person representing the " Lake Erie Ship Canal " has appeared for more than a year to claim this money.   When the controller wrote his letter to the committee, June 5, 1896, doubtless he knew of the appropriation in the ordinance of February, but he did not give that as any reason for refusing to certify a warrant; nor does he refer to it in his answer to the original petition, filed January 22, 1897.

The other, and perhaps the main question in the case, is the

one raised in the controller's letter to the committee. Had the councils power to make the appropriation? The section of the constitution referred to (art. 9, sec. 7) is in these words: " The general assembly shall not authorize any county, city, borough, township, or incorporated district, to become a stockholder in any company, association or corporation, or to obtain or appropriate money or loan its credit to any corporation, association, institution or individual." The principle of this section is not new. It is substantially the same as an amendment to the constitution of 1837, adopted in 1857. It is the same as in the constitution of Ohio. The city of Cincinnati, under an act of the legislature of that state providing that cities of the first class when a railroad was material to the development of a city might contract a loan and build a railroad, actually built a railroad entirely outside of the state of Ohio, except the bridge over the Ohio river, which connected it with the city. The Supreme Court of Ohio gave an interpretation to that section of their constitution, 21 Ohio, 52–4. Our Supreme Court, in Wheeler v. Philadelphia, 77 Pa. 338, adopted the interpretation of the Supreme Court of Ohio, as contained in the opinion of SCOTT, Chief Justice, by this quotation: " The mischief which this section interdicts is a business partnership between a municipal or subordinate division of the state, and individuals or private corporations or associations. It forbids the union of public or private capital or credit in any enterprise whatever. In no project originated by individuals, whether associated or otherwise, with a view to gain, are the municipal bodies named permitted to participate in such manner as to incur pecuniary expense or liability. They may neither become stockholders, nor furnish money or credit for the benefit of the parties interested therein. As this alliance between the public and private interests is clearly prohibited in respect to all enterprises of whatever kind, if we hold that these municipal bodies cannot do on their own account what they are forbidden to do on the joint account of themselves and private parties, it follows that they are powerless to make any improvements, however necessary, with their own means, and on their own sole account. We may be very sure that a purpose so unreasonable was never entertained by the framers of the constitution."

. In this case the city of Pittsburg does not propose to build

the canal, or to loan or appropriate money for that purpose, or to join with any person, association or corporation for that purpose. It simply appropriates $10,000—a very small sum for the city in view of the great object aimed at—for surveys, getting information, etc., to ascertain whether a ship canal between Pittsburg and Lake Erie is practicable, and would be a benefit to the city.

That such a ship canal is practicable, and would be of very great benefit to the trade and industries of Pittsburg, must be taken as true, in this case, for the provisional committee so reported, and it is so stated in the ordinance of July 11, 1895, and is not controverted by the controller in his answers. There can be no doubt, if practicable, it would be of immense importance to Pittsburg to have a ship canal from here to Lake Erie.

It is objected that the provisional committee was appointed by the chamber of commerce, and not by the city. That is true in one sense. But they are all citizens and business men of the city. It was evidently proper for the chamber of commerce, the incorporated body representing the commerce and business of the city, to take the initiative in the matter. Besides, the committee appeared before councils, giving a history and explanation of the project, what they had done, and what they proposed doing, and in view of those facts the councils unanimously passed the ordinance of July, 1895, thus sanctioning the investigation, and indorsing the appointment of the committee.

The objection that the canal would be outside the boundaries of the city, I do not think is entitled to much consideration. There can be no doubt the city could establish gas works or waterworks beyond the city limits to supply the citizens with gas and water; or could purchase and erect a poorhouse outside of the city limits, which was recently done. And in that case some expense was incurred in ascertaining a good location.

The real question is, was a preliminary investigation as to the feasibility of a ship canal, connecting Pittsburg with Lake Erie, and its advantages to Pittsburg, a proper subject for the councils to inquire into and appropriate a reasonable sum for that purpose. If so, I have no doubt of the power of the councils to make the appropriation. There is no complaint of the amount appropriated in this case. It is certainly very reasonable, as the relators, by private subscriptions, had raised and expended for

that purpose $29,000 before they asked councils to appropriate the $10,000.

There is another and good reason why the relators should have this money. The ordinance of July, 1895, pledged the city for $10,000. No objection was made to it by the controller or any other citizen until the controller refused to certify a warrant, in June, 1896, nearly one year after the passage of the ordinance. In the meantime, on the faith of that ordinance, the committee contracted debts in carrying out the very object declared in the ordinance, and actually advanced $2,500. Shall they suffer this loss, or the city pay what it promised to pay them, on the faith of which they incurred the expense? Even if there is a doubt about the power of the city to pass the ordinance of July, 1895, or some legal irregularity in the ordinance of February, 1896, good faith and common honesty would require the city to pay.

The relators have incurred debts, for which proper vouchers have been furnished, to the amount of $7,500. They can only ask for a certificate for that amount at this time. The reports and statistics should undoubtedly be printed for public information. The city would otherwise lose the entire fruits of the investigation. The committee are of opinion it will require $1,500 more for that purpose. When these are printed it will be time enough to ask for another certificate.

The following decree was entered:

And now, March 18, 1897, this case came on to be heard, and was argued by counsel, and upon due consideration thereof, it is ordered, adjudged and decreed, that a writ of peremptory mandamus issue upon H. I. Gourley, controller of the city of Pittsburg, directing him to issue and approve a warrant to the provisional committee of the Lake Erie and Ohio River Ship Canal, for the payment to them of the sum of $7,500, as set forth in the sworn statement, filed by John B. Jackson, treasurer of said committee, with the said controller.

*Error assigned* was decree of the court.

*J. H. Beal,* with him *Clarence Burleigh,* for appellants.— Without express legislative authority the city has no power to make such an appropriation as this: 1 Dillon on Municipal

Corporations, sec. 149; Sharpless v. Mayor, 21 Pa. 147; Penna. R. R. Co. v. Phila., 47 Pa. 189.

The appropriation in this case is within the prohibition of article IX., sec. 7, of the constitution: Speer v. School Directors, 50 Pa. 150; Penna. R. R. v. Phila., 47 Pa. 189; Wheeler v. Phila., 77 Pa. 338; Wilkes-Barre City Hospital v. Luzerne Co., 84 Pa. 59.

*J. W. Kinnear, John C. Slack* and *John E. Shaw*, for appellee, were not heard, but argued in their printed belief.—A municipal corporation is a government possessing powers of legislation, and charged with a general care for the welfare of the people. Its implied powers include all such as are necessary to carry out the objects for which its charter was granted: Williamsport v. Com., 84 Pa. 494; O'Maley v. Borough of Freeport, 96 Pa. 24; Tiedeman on Municipal Corporations, sec. 159; Fisher v. Harrisburg, 2 Grant, 296.

The appropriation in question is not within the prohibition of article 9, section 7 of the constitution: Indiana County v. Agricultural Society, 85 Pa. 357; In re Northern Home for Friendless Children, 2 W. N. C. 349; Walker v. Cincinnati, 21 Ohio, 55.

PER CURIAM, November 8, 1897:

It is unnecessary to refer in detail to the facts of this case. They sufficiently appear in the pleadings and in the opinion of the court below; and for reasons given in that opinion, we think the decree should not be disturbed. The case is clearly not within the inhibition of section 7 article IX. of the constitution. The appropriation was a very reasonable one; and the purpose for which it was made was certainly not foreign to the material interests and general prosperity of the municipality, but quite the contrary. We are therefore of opinion there was no error in holding that councils had the power to make the appropriation, and that good faith to the relators and others who acted in reliance thereon requires that the sum thus appropriated should be paid.

Decree affirmed and appeal dismissed at appellants' costs.