# City of Allentown *v.* Wagner, Appellant.

*Municipalities—Hospital—Contagious diseases—Board of health—Townships—Constitutional law—Statutes—Act of March 30, 1903, P. L. 115.*

Under the Act of March 30, 1903, P. L. 115, amending the Act of May 23, 1889, P. L. 277, a city of the third class may take title to five acres of isolated mountain land in an adjacent township, and build thereon a hospital for contagious and infectious diseases subject to the right of the health authorities of the township to make and enforce reasonable rules and regulations as to the route, manner and hours when patients shall be transferred from the city to the hospital, and the reasonable quarantine of patients while at the hospital.

The words "within the county adjacent," in the act of March 30, 1903, were intended to define a suitable place within a reasonable distance from the city which was especially adapted for hospital purposes.   The fact that both city and township may be within one county is not material.   The authority is to locate the necessary hospital within the city, or without the city and within the county adjacent thereto, in the convenient neighbor-

hood of and reasonably accessible to the city. The word "adjacent" implies nearness to, but not necessarily actual contact.

The Act of March 30, 1903, P. L. 115, is a proper exercise of legislative power, is sufficient in title, and not unconstitutional.

The legislature may prescribe the territorial limits of municipal bodies and the powers granted to them; it may enlarge or contract, subdivide or combine them, and may give them authority to act beyond their boundaries to acquire title to land, to expend public moneys, in order to prevent nuisances, establish homes, hospitals, etc.

Argued Dec. 6, 1904. Appeal, No. 30, Oct. T., 1904, by defendant, from decree of C. P. Lehigh Co., April T., 1904, No. 2, awarding perpetual injunction in case of City of Allentown and C. J. Otto, President of the Board of Health, v. Robert A. Wagner et. al., Directors of the School District of Salisbury Township, Lehigh County, and the Board of Health of said Township. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Bill in equity for an injunction. Before TREXLER, P. J. The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree awarding the perpetual injunction.

*Clinton A. Groman*, with him *Milton C. Henninger*, for appellants.—The appellants contend that the board of health of Salisbury township have the same powers to make rules and regulations so as to prevent the board of health of the city of Allentown from introducing persons from the said city affected with contagious or infectious diseases, into the limits of the township, as the board of health of the city has to prevent the introduction of said cases into the city from outside municipalities. The board of health of the city claims that power. If so, then the same power is delegated to the board of health of the township of Salisbury: Wharton v. School Directors, 42 Pa. 358; Delaware County's App., 119 Pa. 159.

Adjacent, strictly speaking, does not mean adjoining; it means that it shall be in the neighborhood, or convenient or near to: Henderson v. Long, 1 Cooke (Tenn.), 128.

The owner of property half a mile distant from a railway is

not an "adjacent occupant or proprietor:" Continental Imp. Co. v. Phelps, 47 Mich. 299 (11 N. W. Repr. 167).

The act of 1903 is unconstitutional: Pottstown Borough, 117 Pa. 538; Stegmaier v. Jones, 203 Pa. 47; Dailey v. Potter County, 203 Pa. 593; Dorsey's App., 72 Pa. 192; Otto Township Road, 2 Pa. Superior Ct. 20; Quinn v. Cumberland County, 162 Pa. 55.

*Francis G. Lewis*, city solicitor, for appellees.—The "rules and regulations to prevent the introduction and spread of contagious or infectious diseases," which the school directors of Salisbury township are authorized to make under the act of 1889, must not be unreasonable, nor can they be enforced in an unreasonable manner, for such rules and regulations are police regulations which must be reasonable and be exercised reasonably. If they are unreasonable or exercised unreasonably, they are unlawful: Dillon on Municipal Corporations, 319; Yick Wo v. Hopkins, 118 U. S. 356 (6 Sup. Ct. Repr. 1064).

By prohibiting the location and maintenance of said hospital within the township of Salisbury and the conveyance of patients through said township to said hospital, by the city of Allentown, said school directors are acting in an unreasonable manner, whether under their unreasonable rules and regulations or under their reasonable rules and regulations exercised unreasonably: Wharton v. School Directors, 42 Pa. 358.

The act of 1903 is constitutional: Boro. of Mount Joy v. Lancaster, etc., Turnpike Co., 182 Pa. 581; Millvale Boro. v. Evergreen Ry Co., 131 Pa. 1; Pottstown Borough, 117 Pa. 538; Craig v. First Presby. Church, 88 Pa. 42; Erid v. Bootz, 72 Pa. 196; Dewhurst v. City of Allegheny, 95 Pa. 437.

OPINION BY ORLADY, J., March 14, 1905:

The appellee, the plaintiff below, is a city of the third class under the laws of this commonwealth, and has a duly organized board of health, with proper officers to carry into effect its powers and perform its duties. The appellants, the defendants below, are the duly elected and acting directors of the school district of the township of Salisbury; who, by the Act of April 11, 1899, P. L. 38, in addition to the powers vested in them by existing laws, are authorized to act as a board of health

and have full power and authority to make all needful rules and regulations to prevent the introduction and spread of contagious and infectious diseases, etc., into that township. By the said act, among other specially delegated powers, such board of school directors "have power by themselves, or by a sanitary agent to be by them appointed, to enter at any time upon any premises in the said township in which there is suspected to be any contagious or infectious disease, or nuisance productive of such disease or detrimental to the public health, for the purpose of examining the said premises, and abating any nuisance found thereon detrimental to the public health."

The boundary line between the city of Allentown and the township of Salisbury is common to each and both are within the county of Lehigh of this commonwealth. The board of health of the city had under its care a number of persons affected with smallpox and, having no hospital or pest house for the segregation of diseases of this character, temporarily detained such sick and infected persons in the pest house used in connection with the county poorhouse, where they were received by the authorities in its charge, by reason of the urgency of the situation and upon condition that the city and its board of health would promptly provide for another hospital to which these and like patients could be taken and cared for. The disease of smallpox developed among the inmates of the county poorhouse and its auxiliary hospital was required for use of the inmates of the county home. To provide for this emergency and to prevent the spread of this and similar diseases, the city secured the title to a tract of five acres of land, having thereon erected a dwelling and outbuildings, in the township of Salisbury on the Lehigh mountain, about three miles from the limits of the city, to be appropriated and used by the city as a hospital, for the reception and treatment of persons residing in the city affected with contagious or infectious diseases. The school directors of the township, acting as a board of health, passed rules and regulations and appointed a sanitary agent to enforce them to prevent, by force with armed guards, the city from removing any of its patients into the mountain hospital, and to arrest all persons taking such patients through the township to the said hospital. The city, to avoid violence and breaches of the peace, filed a bill in equity

to enjoin and restrain the township authorities from such interference, alleging that it had full power under the Act of May 23, 1889, P. L. 277, and its supplement of March 30, 1903, P. L. 115, to purchase, use, and occupy the lands described, and to establish and maintain a city hospital thereon for such cases. This right was denied by the township board of health ; and after hearing on bill, answer and testimony the court below made a decree enjoining the defendants from interfering in any manner with the removal to the mountain hospital of the patients of the city who were suffering with infectious and contagious diseases ; from that decree the township board of health appealed.

The action taken by the city was dictated by the highest motives and was demanded by the exigencies of the case. It must also be assumed that there were convincing reasons for locating the municipal hospital outside the limits of the city, if it had the power to do so. The site selected was as free of objection as any that could have been made ; being on an isolated mountain side, away from dwellings, and remote from the lines of public travel, it would appear to offer special advantages. While patients would be conveyed to the new hospital along the public highways, it was clearly established that by using proper precautions it could be done without hazard to the public or danger to the sick or infected. Such an institution is an absolute necessity in order to protect adequately a thickly settled community from the spread of diseases likely to become epidemic, and offers the best means for caring for properly the persons to be segregated for treatment. Under proper management such a hospital does not involve any risk to the health of the immediate neighborhood. By scientific sanitation and treatment of patients, supplemented by suitable management of the deleterious waste, the danger from contagious and infectious influences is practically overcome.

The authority, as well as the duty, of a municipality to erect and maintain such a hospital is conceded, and the testimony taken conclusively shows that if the city had authority to place its hospital outside its limits, there is no valid objection to either the location selected by the city, or that its maintenance at that place under proper regulations would be a nuisance or

menace to the health of the citizens of the township, and also that it would not impose any burden upon the taxpayers of the township.

The city and township health authorities before us derive all their powers from a common source—the state legislature. Each speaks for a civil division of the state, and is intrusted with certain executive and administrative powers, which are intended to be directed toward the attainment of local objects and have regard to the health and good order of the inhabitants of the particular territory embraced within its defined corporate limits. The legislature which created them had ample power to regulate each within its boundary lines, or, if it was deemed expedient, to confer authority upon one or both of them to act outside the lines of the one and within the lines of the other. We have nothing to do with the reason for such an enactment, that is alone for the legislature. Our duty is only to see that it was done in conformity with the constitution.

It is established by many decisions that all power committed to a city or borough, usually in the first instance, is confined to its own limits, and without some special provision it does not possess any control or right over lands lying within any other city, borough or township. (Riley v. City of Rochester, 9 N. Y. 64.) The law does not contemplate any invasion of municipal rights, except it is by express statutory enactment, or by the permission of the municipality encroached upon, even for extending highways, erecting hospitals and the like : Dillon on Mun. Corps. sec. 565, 4th ed ; Bank of Augusta v. Earle, 38 U. S. 519, 584 ; Runyan v. Coster, 38 U. S. 122, 129 ; Elizabethtown v. Brockville, 10 Ont. 372 ; Houghton Common Council v. Huron Copper Mining Company, 57 Mich. 547 (24 N. W. Repr. 820) ; South Orange v. Millburn, 36 Atl. Repr. (N. J.) 29 ; Somerville v. Waltham, 170 Mass. 160 (48 N. E. Repr. 1092) ; Richmond v. Henrico County, 83 Va. 204 (2 S. E. Repr. 26). The legislature may prescribe the territorial limits of municipal bodies and the powers granted to them ; it may enlarge or contract, subdivide or combine them, and may give them authority to act beyond their boundaries to acquire title to land, to expend public moneys, in order to prevent nuisances, establish hospitals, homes, etc : vide Chambers v.

St. Louis, 29 Mo. 543 ; Packing Company v. Chicago, 18 Ill. 221 ; Mt. Hope Cemetery v. Boston, 158 Mass. 509 (33 N. E. Repr. 695) ; Seebold v. Shitler, 34 Pa. 133.

By Act of March 19, 1860, P. L. 175, the city of Harrisburg was authorized " to straighten Paxton Creek wherever the same may be necessary within the boundary lines of the city and Swatara township." It was held that the privilege and the power were special and peculiar, not within the general powers of the city, and existing only by force of the act : Harrisburg v. Sheck, 104 Pa. 53 ; Gilchrist v. Strong, 167 Pa. 628. The city of Philadelphia owns and controls its Lazaretto property in Tinicum township in Delaware county by virtue of the acts of March 27, 1787, April 22, 1794, August 7, 1799, January 29, 1818, February 2, 1854 ; and by Act of July 1, 1895, P. L. 419, title thereto became vested in the city relieved of all trusts. In Commonwealth v. Pittsburg, 183 Pa. 202, a mandamus, awarded by the court below, to compel payment of an appropriation by city councils, to defray expenses of having surveys for a ship canal made and securing information as to whether a ship canal between Lake Erie and the Ohio river would be practicable, the enterprise being wholly outside the limits of the city, was sustained.

The Act of March 30, 1903, P. L. 115, expressly authorizes cities of the class to which the appellee belongs " to purchase, take, use, and occupy within the limits of the respective city, or within the county adjacent thereto, private lands, upon which to establish and maintain a hospital or hospitals for the treatment and separation of persons suffering with contagious and infectious diseases." This act is an amendment of the Act of May 23, 1889, P. L. 277, and of the Act of May 16, 1901, P. L. 224, the title to which declares it to be an Act " . . . . enlarging, modifying, and defining the powers of the cities of the third class." This title is comprehensive enough to give notice of the extension of the power already vested in the city to establish a hospital. The source of power being the legislature, that body had primary authority and power to provide for the interest, and health and lives of the citizens of the commonwealth, and by the Act of June 3, 1885, P. L. 56, it declared that in places having no local board of health, or in case the sanitary laws or regulations in places where boards of

health or health officers exist shall be inoperative, the state board of health shall have power and authority to order nuisances, or the cause of any special disease or mortality to be abated and removed, and to enforce quarantine regulation as said board shall direct. The powers and duties of the state board are best exercised and administered when delegated to the local authorities, the title to the Act of 1903 fairly gives notice of every reasonable requirement for the government of cities of the third class, and there is no more important municipal function than the case of the public health: Commonwealth v. Jones, 4 Pa. Superior Ct. 362; Sugar Notch Borough, 192 Pa. 349; Commonwealth v. Gilligan, 195 Pa. 504; Commonwealth v. Keary, 198 Pa. 500; Commonwealth v. Moir, 199 Pa. 534; Franklin v. Hancock, 18 Pa. Superior Ct. 398, affirmed in 204 Pa. 110. The health of the people, the maintenance of hospitals, prevention of epidemics and kindred duties are so strictly related to the government of a city that any person interested would be naturally led to an examination of all the statutory provisions suggested by the title to this act, which specially calls attention to the amendment of germain provisions in the Act of 1901. Millvale v. Ry. Co., 131 Pa. 1; In re Pottstown Borough, 117 Pa. 538. The Act of 1903 does not deprive the appellant of any right or benefit, and imposes no burden upon it. As found by the court below its own citizens are protected from the spread of infectious or contagious diseases, which without proper precautions might overrun the neighborhood and city and be brought into the township. By its local board of health, it has to a large extent the power to regulate the conveyance of patients to and from the hospital by reasonable rules and regulations, in the same manner as it provides for the management of other buildings and persons within the township.

The legislative intent is clearly expressed in the Acts of 1889 and 1903 so as to make them a consistent system, and there is nothing in the latter act to indicate an intention to repeal the former one. Their provisions are not inconsistent or irreconcilable. They may both stand and be executed together for the common good of city and township, and each within its appropriate sphere fulfills the legislative purpose. As stated by the learned judge who entered the decree: " The school board of the

township of Salisbury can still execute its functions in the event of the introduction of infectious or contagious diseases, and at the same time the city of Allentown can maintain its hospital in said township." The legislative mandate is substantially the same to the health board of each: "To make and enforce all needful rules and regulations to prevent the introduction and spread of contagious and infectious diseases, by the regulation of intercourse with infected places, by the arrest, separation and treatment of infected persons, and persons who shall have been exposed to such diseases," and the public health of each will be best conserved by the harmonious action of the two boards.

In giving authority to the city " to use and occupy within the limits of the respective city, or within the county adjacent thereto, private lands on which to establish and maintain a hospital " the legislature delegated a wide and wise discretion which was intended to be exercised by the city councils, and there is nothing in this record to indicate that it has been abused or wrongly applied. This is not denied by appellants further than to urge that the word "adjacent" was intended to define a location which might often be impracticable or impossible. "Within the county adjacent" was evidently intended to define, a suitable place within a reasonable distance from the city, which was specially adapted for hospital purposes. The fact that both city and township are within Lehigh county is not material. The authority was to locate the necessary hospital within the city, or without the city and within the county adjacent thereto, in the convenient neighborhood of, and reasonably accessible to the city. The word "adjacent" implies nearness to but not necessarily actual contact, and it is in this sense that the legislative meaning will be productive of the best results.

The assignments of error are overruled. The injunction granted by the court below is made perpetual, and the defendants are restrained and enjoined from preventing the removal of the patients of the plaintiff, suffering with infectious and contagious diseases, from said city through the said township to the hospital established by the city of Allentown in the township of Salisbury, without prejudice to the right of the board of health of the township of Salisbury to make and en-

force reasonable rules and regulations as to the route, manner and hours when such patients shall be transferred from the city to said hospital and the reasonable quarantine of such persons while at said hospital.