## Cushman v. The Pennsylvania Museum and School of Industrial Art.

*Municipalities—Philadelphia—Appropriation to Museum and Art School—Ordinances—Act of March 11, 1789.*

1. Under the Act of March 11, 1789, 2 Sm. Laws, 463, the City of Philadelphia may by ordinance appropriate money to the Pennsylvania Museum and School of Industrial Art, chartered as a corporation of the first class not for profit, which acts as the agent of the city in the care, maintenance and exhibition of the art collections belonging to the city.

2. The Act of March 11, 1789, 2 Sm. Laws, 463, is still in force, and is not affected by the Constitution adopted in 1874.

Bill and answer. C. P. No. 5, Phila. Co., March T., 1927, No. 13892.

*C. B. Jay*, for plaintiff.

*J. P. Gaffney*, City Solicitor, for Mayor and City Treasurer.

*Edmonds, Obermayer & Rebmann*, for Pennsylvania Museum and School of Industrial Art.

Smith, J., Jan. 27, 1928.—

### Findings of fact.

1. The defendant, The Pennsylvania Museum and School of Industrial Art, is a corporation of the first class, organized under the laws of the Commonwealth of Pennsylvania, for the purposes set forth in its charter, to establish in the State of Pennsylvania and City of Philadelphia a museum of art, with a special view to the development of the art industries of the State and the development of an institution similar in general features to the South Kensington Museum of London.

2. The affairs of the corporation are managed by a board of trustees who serve without compensation or remuneration, no member of the board deriving any profit or gain by virtue of his membership.

3. Fees that are charged for some of the educational facilities furnished are much less than the actual cost of supplying the facilities. No charge is made to the general public for entrance to the exhibitions and entertainments conducted by defendant. All exhibitions and entertainments are open to the general public free of charge.

4. No person, firm or corporation makes or receives any profit or gain, directly or indirectly, as a result of defendant's activity.

5. Defendant conducts its affairs under the control, supervision and management of the Mayor and City Council of the City of Philadelphia, and disburses its receipts and revenues under the direct supervision and control of the city.

The by-laws provide for a board of eighteen trustees, consisting of the Governor of the State and the Mayor of Philadelphia, ex officiis, and one representative of each of the five following bodies, provided they shall make such appointment, viz., the Senate and House of Representatives of the State, the Select and Common Council of the City of Philadelphia, and the Commissioners of Fairmount Park.

6. On Dec. 14, 1926, the Council. of the City of Philadelphia passed an ordinance entitled "An ordinance for the adoption of a financial program of the City of Philadelphia for the year 1927, making appropriations to carry the program into effect," which ordinance was duly approved by the Mayor. In section 21 there is an item, "Appropriating to the Pennsylvania Museum and School of Industrial Art fifty thousand dollars ($50,000) ; payments to be made in quarterly instalments."

7. Plaintiff, a citizen and resident of the City of Philadelphia, owning real estate within the city upon which she pays taxes, claiming to be interested in the proper distribution of revenues derived from taxation, filed a bill in equity to restrain the payment of the appropriation to the Pennsylvania Museum and School of Industrial Art, alleging in the bill that the appropriation comes under the restriction in section 7, article IX, of the Constitution of Pennsylvania; that the Pennsylvania Museum and School of Industrial Art is a private corporation; that the business of the corporation is managed by its board of directors or trustees as other private business corporations are managed, with corporate and salaried officers; that fees are charged for the educational facilities, as well as a charge for admission to the general public for entrance to exhibitions and entertainments conducted by and under its supervision, or held in its respective halls and buildings; that it manages and conducts its business without being under the control, supervision or management of the Mayor and City Council, and disburses its receipts and revenues without any direct supervision or control of the City of Philadelphia; and that the appropriation, if paid, will be distributed without the City of Philadelphia having a voice in the management, control or distribution; that the appropriation is not necessary to the convenience, government and welfare of the City of Philadelphia, constitutes an appropriation of taxpayers' money for a purpose not purely municipal in character and necessary for the welfare and comfort of the city, and is ultra vires and in violation of the rights of plaintiff and other taxpayers and section 7 of article IX of the Constitution of Pennsylvania, which provides: "The general assembly shall not authorize any county, city, borough, township or unincorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for or to loan its credit to any corporation, association, institution or individual."

8. An answer was filed by the Pennsylvania Museum and School of Industrial Art, but no replication was filed by plaintiff.

9. The answer denies that the corporate officers receive any salary or remuneration for services rendered by them; and avers that no member of the board of trustees receives any compensation whatever, directly or indirectly, or derives any profit or gain by virtue of his membership; that the fees charged for the educational facilities are much less than the actual cost of supplying the facilities; and denies that any charges are made to the

general public for entrance to any exhibitions and entertainments conducted by defendant, or under its supervision; and avers that all exhibitions and entertainments conducted by defendant, or with which it is in any way connected, are, and at all times have been, open to the general public free of charge. It is denied in the answer that defendant manages or conducts its business without being under the control, supervision or management of the Mayor and City Council of the City of Philadelphia, and that it disburses receipts and revenues without any direct supervision or control of the City of Philadelphia, and that the appropriation, if paid, will be disbursed without the City of Philadelphia having any voice in the management, control or disbursement. It is averred that the Mayor of the city and representatives of City Council serve on the board of trustees.

It is further denied in the answer that the appropriation is not necessary or convenient for the government and welfare of the city, or that it constitutes an application of taxpayers' money for a purpose not purely municipal in character and necessary for the welfare and comfort of the city; and averred that the defendant performs an important municipal function, and the appropriation is necessary and convenient to the government and welfare of the city, and a legitimate application of public funds. It is denied that the payment of the appropriation would be *ultra vires*, in violation of the rights of plaintiff or any taxpayer, or a violation of section 7 of article IX of the Constitution of Pennsylvania; or that the expenditure of the public money by virtue of the ordinance will be unlawful or entail the bestowal of public funds upon a private corporation or association which is not engaged in the performance of any municipal function of the City of Philadelphia, necessary for the government and welfare of the citizens, and a misapplication of the taxpayers' money; but it is averred that payment of the appropriation is within the power of the municipality of Philadelphia, and to the interest and advantage of all taxpayers of the city, in entire accord with the Constitution and laws of the Commonwealth, and that defendant is engaged in the performance of important municipal functions of the city.

10. The land within the borders of Fairmount Park was condemned by the legislature for the use of the City of Philadelphia, and title is vested in the city by the Act of March 26, 1867, P. L. 547, and the Act of April 14, 1868, P. L. 1083. A board of commissioners was created to supervise and control the park for and on account of the city.

11. Section 17 of the Act of April 14, 1868, P. L. 1088, provides that "The said park commissioners shall have power to accept in the name and on behalf of the city of Philadelphia devises, bequests and donations of land, moneys, objects of art and natural history, maps and books or other things upon such trusts as may be prescribed by the testator or donor; Provided Such trusts be satisfactory to the commission and compatible with the purpose of said park."

12. By virtue of the authority conferred upon them, the Commissioners of Fairmount Park, acting for and in behalf of the City of Philadelphia, have at various times accepted numerous devises, bequests and donations of objects of art and natural history of various kind and descriptions.

13. The Act of March 27, 1873, P. L. 50, provided for an appropriation by the Commonwealth in connection with an appropriation from the City of Philadelphia for the erection of a building in Fairmount Park known as "Memorial Hall," to remain in Fairmount Park perpetually as the property of the people of the Commonwealth, for the preservation and exhibition of

national and State relics and works of art, industry, mechanicism and products of the soil, mines, *et cetera,* of this State, and that it shall be kept open perpetually for the improvement and enjoyment of the people of the Commonwealth under such regulations as the Fairmount Park Commissioners and the State Centennial Supervisors and the proper representatives of the City of Philadelphia shall from time to time prescribe. By the terms of the act, after the Centennial Universal Exhibition closed, the Fairmount Park Commissioners and the State Supervisors and the proper representatives of the City of Philadelphia were authorized to admit into the building works of art, products of industry, etc., of any other state or government under such regulations as might be deemed just and proper.

14. Pursuant to the authority of this act, the building known as "Memorial Hall," situated in Fairmount Park, was erected and equipped.

15. In March, 1877, after the close of the Centennial Exhibition, the Fairmount Park Commissioners, the State Supervisors and the representatives of the City of Philadelphia were organized into a body called "Directors of the Memorial Hall in Fairmount Park;" and by an agreement dated April 22, 1877, acting under authority conferred upon them by an ordinance of Councils of April 5, 1877, granted to the Pennsylvania Museum and School of Industrial Art permission to occupy Memorial Hall, it being stipulated and agreed that the building should be kept in good order and repair by the Pennsylvania Museum and School of Industrial Art during its occupancy and that the collections of the Museum should be kept open, and the Pennsylvania Museum and School of Industrial Art should receive any works of art dedicated or placed under the charge of either of the bodies composing the directors of Memorial Hall.

16. Since the date of the agreement, the defendant, the Pennsylvania Museum and School of Industrial Art, has occupied and used Memorial Hall, kept the same in good order and repair and been the custodian of and taken care of all exhibits, works of art and collections belonging to the City of Philadelphia which were placed in its custody. Since it has had charge of Memorial Hall, the duties of custodian have been increased and the responsibilities enlarged by additional gifts of many rare and valuable works of art accepted by the Fairmount Park Commissioners in the name of and on behalf of the City of Philadelphia, which have been placed in the custody and in the care of defendant. At the present time, in the custody of and under the care of defendant, there is an art collection belonging to the City of Philadelphia having a value in excess of $2,000,000.

17. Defendant has at all times since the date of the agreement of 1877 had control of the building, collections and exhibits, kept the building in good order and repair, cared for the collections and exhibits therein, and kept the building open every day, free of charge, for the benefit of all persons who desired to view and inspect the exhibits and collections.

18. During the year 1926, 413,547 persons visited the Museum.

19. Defendant was chartered as a corporation of the first class on Oct. 27, 1876, by decree of the Court of Common Pleas, and, pursuant to the purposes set forth in its charter, owns and maintains, at the northwest corner of Broad and Pine Streets, in the City of Philadelphia, the building in which a school is conducted by a faculty of experts and skilled teachers and technicians providing courses of instruction in drawing, painting, modeling, designing, dyeing, weaving, etc. The privilege of receiving instruction is available to all duly qualified members of the public; and in cases of persons charged fees for tuition, the charge is much less than the cost of providing instruction.

The Pennsylvania Museum and School of Industrial Art is not conducted or maintained for profit, has no capital stock, and is without power to declare dividends or distribute profits among its officers or members.

20. The only persons who receive salaries or wages are servants, agents and employees, none of whom are members of the board of trustees; and no employee receives more than reasonable remuneration for services rendered to the corporation.

21. It is the practice of the defendant to admit persons desiring to attend the school maintained and conducted by it and to furnish instruction therein at the lowest possible cost to pupils; and to permit the general public to visit, inspect and enjoy the advantages of the exhibitions conducted and maintained by defendant, free of any cost to visitors.

If the payment of the appropriation made by Council is denied to defendant, it will not be possible for defendant to continue to conduct its affairs and activities as heretofore, and the service rendered to the City of Philadelphia and the public will be materially crippled.

## Discussion.

Under No. 54 of the Rules of Equity Practice, no replication having been filed, the averments of the answer are admitted.

The Act of March 11, 1789, 2 Sm. Laws, 467, provides: "That the Mayor, Recorder, Aldermen and Common Councilmen, in Common Council assembled, shall have full power and authority to make, ordain, constitute and establish such and so many laws, ordinances, regulations and constitutions (provided the same shall not be repugnant to the laws and Constitution of this Commonwealth) as shall be necessary or convenient for the government and welfare of the said city, and the same to enforce, put in use and execution, by the proper officers, and at their pleasure to revoke, alter and make anew, as occasion may require."

This act is still in force: Philadelphia *v.* Brabender, 201 Pa. 574.

The appropriation in question was made by virtue of the Act of 1789, and not under authority of any legislation subsequent in date to the Constitution adopted in 1874.

In Com. *v.* Walton, 182 Pa. 373, it was said in the opinion of the Supreme Court: "By the Act of March 17, 1789, which appears to be still in force, the city councils of Philadelphia 'have full power and authority to make, ordain and establish such and so many laws, ordinances and regulations as shall be necessary for the welfare and comfort of the city.' We have no right to assume, nor is there anything from which it may be fairly inferred, that the constitutional prohibition in question was intended to revoke or curtail any of the powers or authorities with which the city councils were theretofore invested by the comprehensive grant above quoted."

In that case, an appropriation of Councils for the creation or maintenance of a police pension fund, though not an appropriation for strictly municipal use, was held to be for the welfare and comfort of the city in the following language quoted from page 377: "Aside from the general authority of councils to make such appropriations, and aside from any question of expediency or propriety in their doing so, this case might well be disposed of on the ground that the constitutional prohibition relied on by the defendant is inapplicable to councils. In Indiana County *v.* Agricultural Society, 85 Pa. 357, this court held that the section in question 'deals only with legislative power.' . . . That power is thereby limited and restricted. It declares what the legislature 'shall not' do. It annuls nothing that it had done. It forbids

such legislation thereafter. It struck down no law. Its prohibitions were wholly prospective. It is not pretended that the ordinance in question was enacted in pursuance of any legislation passed since the adoption of the constitutional prohibition. It, therefore, follows that the latter has no application here."

In Com. v. Barker, 211 Pa. 610, an ordinance appropriating money to a firemen's relief association was sustained, and in Com. v. Walton, supra (page 377), it was held: "There is no merit in the objection that councils delegated the distribution of the sum appropriated to the Philadelphia Police Pension Fun Association instead of distributing it themselves; if they were satisfied, as they doubtless were, that the distribution of the fund would be better effected through the agency of the association than by an agency of their own creation, they had a right to so provide."

The Pennsylvania Museum has relieved the city of the management of Memorial Hall and fulfilled the conditions placed on the' city by the Act of 1873; has kept the building open for the enjoyment of the public and used as a place for exhibition of works of art; and has taken full charge of and is caring for the valuable collections belonging to the city and the objects of natural history, maps, books, etc., which the Commissioners of Fairmount Park have accepted on behalf of the city. These objects are cared for, preserved and arranged for display and exhibition by the Pennsylvania Museum and School of Industrial Art as the agent of the city. This duty demands the services of experts and persons qualified to exercise the requisite skill and care. In supplying this expert knowledge and skill, the Pennsylvania Museum and School of Industrial Art is serving the city and contributing to its welfare; and the delegation of this service is within the ruling of Com. v. Pittsburgh, 183 Pa. 202; Com. v. Walton, 182 Pa. 373, and Com. v. Barker, 211 Pa. 610.

Within the past few days the Honorable Harry A. Mackey, Mayor of the City of Philadelphia, sent to the Council of the City of Philadelphia his message placing in nomination names to fill vacancies in certain boards of trustees, and Charles J. Webb, by unanimous vote of the City Council, was elected a trustee of the Pennsylvania Museum and School of Industrial Art.

The instant case is distinguishable from Kulp v. Philadelphia, 291 Pa. 413, in which there was an appropriation by ordinance of $25,000 to a private company engaged in the production of operas, employing paid singers and musicians and charging admission for the privilege of attending performances. There was no return to the city for the appropriation, except by a certain number of free tickets distributed under the supervision of the president of the opera company and the Director of Public Welfare to "scholars of various universities, colleges, public, parochial and other schools" and to "students" of selected musical organizations, necessarily a very small number of people, considering the total population of the city. There was no contract requiring the company to give any performance, although it was not entitled to collect instalments of the appropriation unless one performance was given for each instalment. The city had no voice in any phase of the management.

The Chancellor found as a fact that the appropriation was not made to sustain a municipal purpose and that the contract was not of a character which the City Council was either directly or indirectly authorized to make.

The admitted facts averred in the answer in the instant case establish a municipal character to the services rendered by the Pennsylvania Museum and School of Industrial Art in the care of the valuable art collections now owned by the city and which will, from time to time, be materially increased.

Cushman v. The Pennsylvania Museum and School of Industrial Art.

The appropriation has been made by City Councils to the Pennsylvania Museum and School of Industrial Art for many years and never been questioned until the present suit.

### Conclusions of law.

1. An appropriation of $50,000 to the Pennsylvania Museum and School of Industrial Art by ordinance of Council approved Dec. 14, 1926, is a legitimate use of municipal funds.

2. The appropriation is not unlawful or *ultra vires*.

3. The appropriation is not unconstitutional and is not a misapplication of municipal funds.

4. The prayers of the bill should be refused.

5. The bill of complaint filed in this case should be dismissed.

6. Plaintiff should pay the costs.

### Decree nisi.

And now, to wit, Jan. 27, 1928, on consideration of the foregoing case, it is ordered, adjudged and decreed that the bill in equity filed be dismissed, and that plaintiff pay the costs.