MARGARET CONNOLLY, Appellant, v. CITY OF DES MOINES, Appellee.

**MUNICIPAL CORPORATIONS:** Officers and Employees—Extra Compensation—Essential Condition. A municipal employee who seeks recovery of extra compensation for extra time,—time beyond his regular hours,—by virtue of a contract for extra pay, must show that the officer so employing him had authority to contract for extra pay.

**MUNICIPAL CORPORATIONS:** Officers and Employees—Powers in
2  General. A person dealing with a municipal officer as such is con-
clusively presumed to have full knowledge of the lawful limitations
placed on the authority of such officer.

**MUNICIPAL CORPORATIONS:** Officers and Employees—Compensa-
3  tion—Ordinance Requirements. A municipal employee who is seek-
ing to recover extra compensation for extra time employed in his
work is bound by an ordinance providing (1) that the council shall
fix all salaries; (2) that such salary shall be exclusive of all other
salary; and (3) that all contracts shall be entered into by ordinance
or by resolution or in writing.

Headnote 1: 28 Cyc. p. 602. Headnote 2: 28 Cyc. p. 649. Headnote
3: 28 Cyc. p. 51.

*Appeal from Polk District Court.*—Joseph E. Meyer, Judge.

June 25, 1925.

Action against the city of Des Moines to recover compen-
sation for overtime connected with the work by the appellant
from December 5, 1919, to July 31, 1920. From a directed ver-
dict in favor of defendant, the plaintiff appeals.—*Affirmed.*

*James A. Merritt,* for appellant.

*W. E. Miller, H. H. Griffith, C. A. Weaver,* and *Russell Jor-
dan,* for appellee.

Albert, J.—The plaintiff claims that she worked in the
city hospital in the city of Des Moines under an oral agreement
of employment, beginning work at 5:30 in the morning, cleaning

1. MUNICIPAL
CORPORATIONS:
officers and em-
ployees: extra
compensation:
essential condi-
tion.

offices until 7:30, then working two hours at
noon, and beginning again at 5:30 in the eve-
ning, and working until 8:30. In addition to
this, she worked for two weeks from 8:30 to
11:30 P. M., making a total of 1,703 hours of extra work. By
the custom for extra work in Des Moines, plaintiff claims that
she is entitled to time and a half for overtime, or 47½ cents per
hour. She claims that 8 hours was a regular day's work.

Plaintiff further claims that the defendant city delegated

to the board of trustees and superintendent of said hospital full power to control and superintend all affairs pertaining to said hospital, and all functions which were properly ministerial and administrative; that the board of trustees and superintendent employed all help and labor in operating the same; and that she had an oral agreement with the superintendent of the hospital to do this work.

In the second count of her petition she alleges that she performed said extra work at the request of and under an oral agreement with the superintendent; that said extra work was outside of her employment each day as housekeeper, and was a different kind of work, and made absolutely necessary on account of the scarcity of help; that said extra employment was within the scope of authority delegated to said superintendent; and that plaintiff was entitled to recover on a *quantum meruit*, as well as by contract of employment: and she demands judgment.

Defendant, answering, denies generally each and every allegation of the petition regarding overtime, and especially pleads Section 48 of Ordinance 1000 of said city, which provides, among other things, that every employee shall receive a stated salary and stated compensation, to be fixed by the city council, when not fixed by law; that said salary shall be in lieu of all fees or compensation; and that no person shall receive for his own use any fees or other compensation for his services as such officer or employee. Defendant denies the indebtedness, because it is provided by city ordinance that all contracts of employment shall be evidenced by an affirmative action on the part of the city council in the adoption of the proper resolution. It says that no resolution was ever adopted employing the plaintiff for any extra services.

Replying, the plaintiff alleges that Ordinance 1000, above referred to, was repealed before the employment of plaintiff; that the defendant and its officers and the superintendent of the hospital have continuously employed workmen and other labor at said hospital without regard for said ordinance; that they employed plaintiff to do extra work for extra pay for hours not included in her employment as housekeeper, all of which was well known to the defendant city; and that it is now

barred from denying payment, because it received the benefits of her labor, and it is estopped further for the reason that the superintendent, by actual consent of the city, was given authority to hire all help for the hospital, and so acted. Plaintiff further alleges that the superintendent had authority to fix the price of labor, aside from the authority given by Ordinance 2651, Section 4.

The case was tried to a jury; and at the close of plaintiff's evidence, defendant filed a motion for a directed verdict, consisting of nine grounds. This was sustained, and judgment was rendered against the plaintiff for costs. Thereupon, plaintiff filed a motion for new trial, which was later overruled.

It appears from the case made by the plaintiff that the hospital of the defendant was in charge of one Miss Addington. To a full understanding of the case, it becomes quite important to know just what this agreement was. Plaintiff testifies as follows:

"Miss Addington hired me as a housekeeper; and on the 5th of December, 1919, she said she wanted me to come in the morning, and be there before 6 o'clock. She asked me, would I go and clean her office, the doctor's office, and the reception room; and I had it to sweep and clean out; and I could go and get my breakfast, and come back and dust, and have it ready for her at 8 o'clock. She said she wanted me to have it all done before she got there. She said she wanted me to have it clean; and there was no one to do it, only me. I was living on Dean Avenue at that time. I asked her about that, and she said, 'Well, it has got to be done, Mrs. Connolly; that is all.' About the time I was to begin work, I told her I had to be there very early; and I was there at 5:30 every morning. At this work of cleaning, I was to work from 5:30 to 8:30 at night; I was not cleaning all day. I worked at the cleaning from 5:30 in the morning until 7 o'clock in the morning; and after the cleaning I would start then at 1 o'clock and work until 2; and then again I would start at 5 o'clock in the afternoon and work at the cleaning until 8:30. At this I worked every day in the week, Sundays and all. I washed dishes until way after 9 o'clock at night. The reason I did this extra work was because they could not get help. I worked at sewing for two weeks in January, commenc-

ing after I got done with my work at 8:30 P. M., and I was there until after 11. During all this time that I was doing the extra work, I commenced at 5:30 in the morning, and worked until 7:30 o'clock A. M., then worked 2 hours extra in the middle of the day, and then commenced at 5 o'clock, at the regular quitting time. I put in 3 hours' extra work then. Now when I commenced this work, and while I was doing this extra scrubbing and cleaning, I talked with Miss Addington about it and about the pay,—for who would pay; and she said, 'The work has got to be done, and it will have to be paid.' She said, 'The city dads know what they are up against,'—that is the way she answered me. During all of this time, I was receiving $75 a month.''

The husband of the plaintiff testifies that the superintendent Addington told him, in the conversation, that ''the rule is time and a half for overtime;'' and he said, ''That makes 47½ cents an hour.'' She said, ''I am willing to pay that.'' He said that, as long as she could stand it, he wouldn't object to it. She said she would have to go ahead, and the city would have to pay her for extra time. This is simply the statement by Miss Addington to him. He says he did not hear the original employment and contract between his wife and Miss Addington.

The sum total of the plaintiff's claim, briefly stated, is that she was hired at the hospital at a fixed compensation of $75 per month, under the facts heretofore recited, taken from her testimony.

Many legal questions are discussed in this case, but those necessary to its decision are few. The hospital in question was bought and owned by the city of Des Moines. The control and management thereof, however, were under the board of trustees, who were elected by direct vote of the electors of the municipality. Miss Addington was superintendent thereof. The general power, control, and management of said hospital were primarily in the board of trustees. It is so provided by statute. The plaintiff claims, however, that she had a contract with the city of Des Moines to labor for it, under the terms of which she was paid $75 a month for her services. Without requoting her duties, as shown by her testimony heretofore set out, we are met at the threshold of the case with the claim on her part that

8 hours was a day's work, and that for all overtime she worked beyond 8 hours each day, she was entitled to extra compensation. She had no contract or agreement with any other person or officer representing the city, than with Superintendent Addington.

We have too often held—without stopping now to cite the authorities—that one who attempts to deal with a municipality must deal at arm's length. They are bound to know the limitations on authority of the officers and employees of the city, and deal with them at their peril. We have so announced this rule in *Citizens' Bank of Des Moines v. City of Spencer,* 126 Iowa 101, and numerous other cases subsequent and prior thereto. It was therefore incumbent upon the plaintiff to establish that the superintendent of the hospital had power to make a contract for extra work for which she claims compensation. The evidence does show that she was employed to do the work described by her in her testimony at $75 a month; and from her description of the work that she was to do, as shown by her testimony, it is, to say the least, a justifiable conclusion that it was to cover all the work she did. This being so, of course she would not be entitled to maintain a claim for extra compensation.

2. MUNICIPAL CORPORATIONS: officers and employees: powers in general.

Passing this question, we are next to determine, under the facts in the case, whether there is anything to show that the superintendent had power to make a contract with her for compensation for extra work. If the evidence does not show that this power existed, then of course she cannot maintain such action.

The general rule is well settled that, except where there is a special agreement therefor with one authorized to make such an agreement, no extra pay can be recovered for work outside of regular hours. Subject to the same exception, a municipal employee cannot recover extra pay for services outside of his duties. *Gathemann v. City of Chicago,* 263 Ill. 292 (104 N. E. 1085); *Woods v. City of Woburn,* 220 Mass. 416 (107 N. E. 985); *Vogt v. City of Milwaukee,* 99 Wis. 258 (74 N. W. 789); *Robinson v. City of Perry,* 35 Okla. 475 (130 Pac. 276); *Luske v. Hotchkiss,* 37 Conn. 219 (9 Am. Rep. 314); *McCarthy v. Mayor,* 96 N. Y.

1; *Grady v. City of New York,* 182 N. Y. 18 (74 N. E. 488);
*Tyrrell v. Mayor,* 159 N. Y. 239 (53 N. E. 1111); *Davis v. Detroit Boat Works,* 121 Mich. 261 (80 N. W. 38); *Bartlett v. Street R. Co. of Grand Rapids,* 82 Mich. 658 (46 N. W. 1034).
It is shown by this line of authority that, before the plaintiff is entitled to recover herein, she must not only show the work performed, but must show that she had a specific agreement with the superintendent that she was to be compensated for the extra work, and that the superintendent was authorized by the city to so contract with her. As to evidence that the superintendent was authorized to so contract, the record is wholly silent. She drew her pay of $75 a month regularly from the city treasurer, and made no complaint to the city and no request to any of the city officers to pay her more than the stipulated stipend. She does not show at any place in the record that there was any authority whatever given to the superintendent of the hospital to contract to pay for extra time; and failing in this respect, her case must fail.

Further than this, the city of Des Moines had in full force and effect, at the time of her employment and ever since, Ordinance 1000. Section 48 of this ordinance provides that every city officer, whether elected or appointed, and every employee of the city, shall receive a salary or stated compensation, to be fixed by the city council, when not fixed by law. Said salary or compensation shall be in lieu of all fees or other compensation, and no such officer or employee shall receive for his own use any fees or other compensation for his services as such officer or employee other than the salary or stated compensation fixed by the city council.

3. MUNICIPAL CORPORATIONS: officers and employees: compensation: ordinance requirements.

Part of Ordinance 1563, referred to and set out, so far as material herein, referring to the powers and duties of the city council, says:

"It shall make or authorize the making of all contracts, and no contract shall be binding or obligatory upon the city unless either made by ordinance or resolution adopted by the council or reduced to writing and approved by the council or expressly authorized by resolution adopted by the council. All superintendents of the department and officers are the agents

of the council only, and all their acts shall be subject to review and to approval or revocation by the council.''

The plaintiff alleges that she is a resident of the city of Des Moines; and being such, and in the employ of the city, she is bound to know the contents of these ordinances, so far as they affect her contract; and they are binding on her.

There is some evidence from some persons who were at one time on the board of trustees that they authorized the superintendent to employ the help; but there is no showing of any kind that they authorized the superintendent to make a contract to pay extra compensation to such help.

Under the status of the record as we have it before us, we are satisfied that the plaintiff did not make out a case to go to the jury, and therefore the action of the district court in directing a verdict for the defendant was the only thing that could be done, under the circumstances.—*Affirmed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.