KATE KENNEDY, RESPONDENT, v. CITY OF NEVADA, APPELLANT.*

Kansas City Court of Appeals. February 1, 1926.

---

*Corpus Juris-Cyc. References: Municipal Corporations, 43CJ, section 190, p. 194, n. 79; section 192, p. 196, n. 2; section 1734, p. 956, n. 29; p. 958, n. 55; section 2089, p. 1330, n. 15, 17; 44CJ, section 2323, p. 184, n. 17; section 4040, p. 1114, n. 50.

*C. E. Gilbert* and *W. H. Hallett* for respondent.

*A. J. King* and *M. T. January* for appellant.

BLAND, J.—This is a suit in two counts, based upon an alleged nuisance maintained by the City of Nevada. The first count is for damages caused by reason of the maintenance of the nuisance; the second count asks for injunctive relief to restrain the city from continuing the nuisance. The trial resulted in a judgment in favor of plaintiff on the first count in the sum of $175 and on the second count

in perpetually enjoining defendant for continuing the nuisance. Defendant has appealed.

The facts show that defendant has been maintaining a tourist camp on a block of land within the city limits of Nevada, alleged to be owned by the city. On the tourist camp grounds the city maintained four shower baths and two toilets which were connected with a cesspool. There was a drain connected with the cesspool that led out into Walnut street where it became an open ditch, or gutter. Plaintiff's property was located diagonally across from the block of land containing the tourist camp and on the opposite side of the street from the ditch. The water that was discharged upon Walnut street from the cesspool contained human feces and gave forth vile and nauseating odors. Whether Walnut street is a public street is not shown.

The answer sets up as a defense, among other things, that the city had no right to acquire land for the purpose of conducting a tourist camp, a space merely for the accommodation of travelers, not residents of the city, who might pass through, as a place of rest and to cook their meals.

The evidence shows that various motions were made and carried in the city council to purchase the land in controversy for a tourist camp; that committees of the council were appointed to erect improvements; that these improvements consisted of toilets, shower baths, kitchen, etc., and were paid for by the city; that the committees made various reports, a caretaker of the park was appointed, the city paid the consideration recited in the deed for the purchase of the land and the deed conveying it to the city was duly recorded. There was, however, no ordinance passed for the purchase of the ground or for the acceptance of the deed or for the using of the park or for fixing its dimensions.

Defendant insists that the city had no power to purchase land for the maintenance of a tourist camp and therefore was not liable in this case. Plaintiff makes no claim of any express authority given cities of the third class, of which defendant is one, to purchase land for a tourist camp. However, plaintiff contends that by virtue of section 8205, Revised Statutes 1919, "there is no limit of the power of a city to purchase and hold real estate. The only limitation would be whether or not such city had funds legally available for such purpose." If this is the law, third class cities of this State may purchase office buildings, hotels, department-store structures and the like regardless as to whether they are fitted for municipal purposes. Section 8206 provides that cities of the third class, among other things—

". . . may receive and hold property, both real and personal, within such city, and may purchase, receive and hold real estate within or without such city for the burial of the dead; and may purchase, hold, lease, sell or otherwise dispose of any property, real or personal, it now owns or may hereafter acquire; may receive bequests, gifts

and donations of all kinds of property; and may have and hold one common seal, and may break, change or alter the same at pleasure, and all courts of this State shall take judicial notice thereof."

It will be noted that the language of the statute is unusual, the only connection in which the word "purchase" is used is in reference to burial grounds, and to the disposal of property that the city may own. But conceding that this section standing alone gives unlimited authority to such cities to purchase real estate, there are other provisions of the laws of the State restricting that right on the part of cities. We refer to sections 1, 3 and 10, of Article 10, of the Constitution. Under the provisions of these sections cities have the power to levy and expend taxes for corporate or municipal purposes only. [State ex rel. v. City of St. Louis, 216 Mo. 47, 90, 91; Houck v. Drainage Dist., 248 Mo. 373, 384.] It is, therefore, apparent that the city may not devote public funds raised by taxation to the purchase of real estate for other than municipal purposes. The question to be determined then is whether or not the purchase of the land in question by the city for the purpose of using it as a tourist park, was a purchase for a municipal purpose.

There is some intimation in plaintiff's brief that a tourist camp is a public park. We think that it is quite evident that it is not. The record shows that this camp was maintained for the accommodation of people who traveled through the country in automobiles; that no one used it except people so traveling; that there was a charge made in connection with its use by the traveler if he stayed more than three days. It would appear that it was a place to stop and rest, to cook meals and to spend the night, provision for these being furnished. There were also furnished shower baths and toilets. It can hardly be said that ground devoted to such purposes and for the exclusive use of transients and nonresidents of the city is a public park.

"A park is variously defined to be 'a pleasure ground in or near a city set apart for the recreation of the public;' 'a piece of ground inclosed for purposes of pleasure, exercise, amusement or ornament.' [Perrin v. Railroad, 36 N. Y. 120.] 'A place for the resort of the public for recreation, air and light . . . a place open for everyone.' [Price v. Inhabitants, 40 N. J. L. 613.]" [State ex rel. v. Schweickardt, 109 Mo. 496, 510.]

". . . a park in a city means to the sense of every person a place open to every one. It carries no idea of restriction to any part of the public or to any specific number of persons. Restrictions as to time of entrance or behavior of those entering are conceivable, but the idea that any class of the community is to be excluded would not be entertained primarily by any person in connection with the idea of a park within the limits of a city." [Sanborn v. City of Amarillo, 93 S. W. 473, 474 (Texas).]

The purchase of this land by the city must therefore be justified on some other ground than for park purposes. We fail to see on what ground this camp can be said to be maintained for municipal purposes. It was purely for the accommodation of guests of the city, transients passing through and using the accommodations provided by the city as a mere convenience.

It has been held that a municipality has no power to expend its funds to provide entertainment and extend hospitality or to furnish social pleasures either to its citizens or invited guests. [Hodges v. The City of Buffalo, 2 Den. 110; Tash et al. v. Adams, 64 Mass. 252; Austin v. Coggeshall, 34 Amer. Reps. 648 (R. I.).]

"The general rule that a public corporation cannot make a contract to provide an entertainment for its citizens or guests is freely conceded; also that it is not within the power of cities of the third class to make appropriations for expense incurred in providing refreshments, entertainments, and dinners for delegates to a convention; or for entertaining guests at a supper or ball; or, indeed, for the purpose of extending hospitality or furnishing social pleasures either to citizens or invited guests." [Stegnaier v. Goeringer, 218 Pa. St. 499, 11 Amer. & Eng. Ann. Cases, 973, 974.]

In Hodges v. City of Buffalo, the statute authorized the common council to manage the finances and the corporate property and to make by-laws for certain specific purposes; also to make and change such ordinances, by-laws and police regulations "for the good government and order of the said city and the trade and commerce thereof as may be necessary to carry into effect the powers given to said council." It was held that the council had no power to provide entertainment and a ball at a hotel for the citizens and certain military guests commemorating an anniversary of our national independence.

Commonwealth ex rel. v. Gingrich, 21 Pa. Sup. Ct. Rep. 286, was an action in mandamus to compel the City Comptroller to approve bills and warrants "for expense incurred for refreshments and entertainment of guests of the city" and "invited residents of the city and for expense of giving them a fish dinner on the Peninsula." The entertainment was for delegates to a convention of the League of Third Cities. This league was formed for the purpose of advancing various interests of such cities and to promote remedial legislation therefor and for discussion and exchange of views upon any and all topics pertaining to the welfare and conduct of the same. The Legislature empowered the city to make ordinances, by-laws, regulations—

". . . 'as may be expedient or necessary . . . for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government and welfare of the city, and its trade, commerce and manufactures.'"

The court in passing upon the case stated, l. c. 292—"The powers here granted are very broad, but if the grant is to be construed so as

to authorize such expenditures as were shown by the bills which the controller was asked to approve, it would be difficult to point out the limits beyond which the corporate officers cannot go in the expenditure of money for social pleasures. The expenditures have no relation to any of the objects expressly mentioned in the section unless it be the welfare of the city, but we fail to see how that is promoted, or how it profits the great body of citizens, that a few persons should eat and drink at their cost. The case of Commonwealth v. Pittsburg, 183 Pa. 202, is plainly distinguishable from the case at bar, and in the case of Tatham v. Philadelphia, 2 W. N. C. 564, a principle in the construction of statutes was relied on which cannot be invoked here. The general rule established by the great weight of authority is that a public corporation cannot make a contract to provide an entertainment for its citizens or guests. [9 Dillon's Municipal Corporations (4 Ed.), sec. 149; 15 Am. & Eng. Ency. of Law (1 Ed.), p. 1051, and cases there cited; Bergner v. Harrisburg, 1 Pearsons, 291; See, also, as bearing indirectly upon the question as it is presented here, Cumberland County v. Poor Directors, 7 Pa. Sup. Ct. 614, and McKean County v. Young et al., 11 Pa. Sup. Ct. 481.]"

The charter of the City of Eufaula, Alabama, provided "that the city council should have full authority to purchase and provide for the payment of all such real estate and personal property as may be required for the use, convenience and improvement of the city, etc." Acting under this power the city council of Eufaula purchased a tract of land located within its corporate limits for the benefit of the S. E. Alabama A. & M. Association, and as a place for holding their annual fairs, and the association was given the exclusive use of the premises. It was held that the action of the council in making the purchase of the land for the particular purpose for which it was bought was *ultra vires.* [City of Eufaula v. McNab, 67 Ala. 589.] It was stated in that case, l. c. 591—

"As said by Mr. Justice MILLER, in Loan Association v. Topeka, 20 Will, 655, 660, 22 L. Ed. 455: 'It follows that in this class of cases the right to contract must be limited by the right to tax, and if in the given case no tax can lawfully be levied to pay the debt, the contract itself is void for want of authority to make it.' The same view was expressed by BRICKELL, C. J., in the N. O. M. & C. R. R. v. Dunn, 51 Ala. 128, 136, where the following language is used: 'The power of taxation thus conferred (by the charter) must be limited and confined strictly to the purposes for which the corporation is created. The revenues derived from the exercise of this power must be faithfully applied to these purposes. The corporate authorities cannot, without a violation of duty and usurpation of power, appropriate the revenues thus produced to any other purposes or objects than such as are fairly expressed or reasonably implied in the charter. It is not material what is the character of the object, or how pressing the necessity, or

what are the benefits, real or imaginary, which may flow to the city. If not within the purposes of the act of incorporation, there is a want of power in the corporate authorities. It was said by the Supreme Court of Maine, in Allen v. Inhabitants of Jay, 60 Me. 124, 11 Am. Rep. 185, that 'taxation, by the very meaning of the term, implies the raising of money for public uses, and excludes the raising if for private objects and purposes.' 'I concede,' says BLACK, C. J., in Sharpless v. Mayor, 21 Pa. 168, 59 Am. Dec. 759, 'that a law authorizing taxation for any other than public purposes is void.' ''

In the case of Markley v. Mineral City, 65 Amer. Stat. Rep. 776 (Ohio), the municipality paid out of its corporate funds money to purchase land to be donated by it to a private corporation as an inducement for it to build a private manufacturing plant within the corporate limits. It was held that the money was unlawfully expended and that the deed taken by the city purporting to convey such land was *void*. It was stated by the court, 1. c. 778—

''The right of a municipality to acquire property is given by paragraph 33 of section 1692 of the Revised Statutes, in these words: 'To acquire by purchase, or otherwise, and to hold real estate, or any interest therein, . . . for the use of the corporation, and to sell or lease the same.' Here is specific mention of the purposes for which land may be acquired. The controlling idea is that the property must be for the use of the corporation.''

We do not say that the Legislature has no power to authorize cities of the third class to acquire and hold property for other than strictly municipal purposes. It has been held that even under the common law land may be given or devised to the city or the city may obtain title by adverse possession, and the city may lawfully acquire title thereto although the land may not be wanted for municipal purposes, yet the city may acquire it for the reason that it may be applied by sale or lease to the alleviation of municipal burdens. [New Shoreham v. Ball, 14 R. I. 566.] And there is no doubt but that section 8206, Revised Statutes 1919, gives authority to cities of the third class to ''receive bequests, gifts and donations of all kinds of property.''

''By the immemorial usage of the country it appears to have been recognized as an incident to the corporate powers of municipal corporations that they may purchase and hold property, both real and personal. So also a municipal corporation has an implied power to receive a gift of real estate for any corporate purpose. *While a municipal corporation would of course have no power to purchase with the public funds land or other property except for such public purposes as it was authorized to expend money for by its charter*, it is well settled that it may hold real estate which is not devoted or intended to be devoted to any public purpose when such property has come to it in a lawful manner, as by gift or devise or has ceased to be

used for the public purpose for which it was originally acquired." [19 R. C. L., pp. 770, 771.] (Italics ours.)

A city can purchase property for municipal purposes and after it has become no longer necessary to be used for that purpose may hold it, and it may be that in holding all property that comes to it in a legal manner, it can, as an incident to the ownership, look after the same and be liable for the maintenance of a nuisance upon it. But that is not this case. Here the city was guilty of a wholly *ultra vires* act in attempting to purchase the land in question for a tourist camp, and under the holding of Markley v. Mineral City, supra, acquired no title to it.

Defendant contends that even if the city had power to purchase the land for a tourist camp, it was not done in a legal manner, but it is unnecessary for us to pass upon this question in view of what we have said.

The city is liable for creating a nuisance where the authority is exercised in accordance with law although in an irregular manner. [Foncannon v. City of Kirksville, 88 Mo. App. 279; Dooley v. City of Kansas, 82 Mo. 444. But see Windle v. City of Springfield, 275 S. W. 585.] But there is no liability where the act done which is injurious to others, is not within the scope of the corporate powers as prescribed by the charter of the city or by positive enactment. [See Clayton v. City of Henderson, 103 Ky. 228, 236, 237; 4 Dillon, Municipal Corporations (5 Ed.), secs. 1647, 1648.] Here the city had no authority whatever to acquire land for tourist park purposes, therefore, it is not liable for the maintenance of a nuisance in connection therewith. "Generally the courts have recognized as a truism that what a municipality has no power to do it has not done merely because it tried to do it." [28 Cyc. 279.]

However, there is no question but that a city may be liable for maintaining a nuisance on property that it does not own. [Davoren v. Kansas City, 273, S. W. 401.] But, of course, if it has no authority to do the act out of which the nuisance arises, in other words, if the act is wholly *ultra vires*, then it is not liable for the nuisance. The statute does not expressly confer upon cities of the third class the right to maintain a tourist park and the question arises as to whether it has implied right to do it upon property not its own. From what we have said it has no authority to acquire land for a tourist park and cannot be held liable on the theory that it was maintaining a nuisance on land owned by it.

"The Legislature of a state, merely by establishing a municipal corporation, does not delegate to such corporation the right to exercise all the governmental powers of the state within its territorial limits, or even such powers as are commonly exercised by a municipal corporation of the same class. It is well settled that a municipal corporation has only such powers as are clearly and unmistakably granted to

it by its charter or by other acts of the Legislature, and consequently can exercise no powers not expressly granted to it, except those which are necessarily implied or incident to the powers expressly granted and those which are indispensable to the declared objects and purposes of the corporation. Any fair and reasonable doubt concerning the existence of the power, or any ambiguity in the statute upon which the assertion of the power rests, is to be resolved against the corporation and the power denied.'' [19 R. C. L., pp. 768, 770.]

Of course, a municipality has no implied power to engage in a private business. [19 R. C. L., p. 788, sec. 95.] The operation of a tourist camp, whether the city receives any compensation therefrom or not, especially where the inhabitants of the city are excluded, is certainly not a public business. The evidence shows that these grounds were used substantially as an outdoor hotel and no one would contend that a municipality would have the implied authority to operate a hotel for the benefit of transients.

The judgment is reversed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.