GOLF VIEW REALTY COMPANY, Appellee, v. CITY OF SIOUX CITY, Appellant.

No. 43550.

434

OCTOBER 27, 1936.

H. C. Harper and John D. Beardsley, for appellant.

Crary & Crary, for appellee.

KINTZINGER, J.—On May 17, 1929, the city council of Sioux City adopted a resolution authorizing and directing the mayor and city clerk to enter into a contract to purchase certain real estate then held by the city under a lease, and known as the Highview Municipal Golf Course, for $45,000. Pursuant to said resolution, the mayor and city clerk of Sioux City entered into a contract with the owners of said real estate for the purchase thereof under the terms as set forth in the resolution.

The property had been leased to the city in 1924 for use as a city park, or a municipal golf links, and was used and operated by the city as a municipal golf course from the time it was leased in 1924 until shortly after the contract of purchase was executed in 1929.

As a defense to this action, defendant alleges that the property was purchased for a public golf links and not for a park.

It is conceded that the city of Sioux City had at that time a population of eighty thousand.

The evidence tending to show the purposes for which the real estate was purchased was the recital in the lease under which it was held by the city before its purchase; the fact that it was used as a municipal golf course for a period of less than two

months after the contract of purchase was entered into; and the testimony of J. L. Levitt, who signed the contract of purchase for one of the grantors, that he knew at the time of the purchase that the city intended to continue operating a golf course on said premises.

There is no statement in the contract of purchase as to the purpose for which the property was to be used, and there is not a word of direct evidence that the property was not to be used for park purposes.

The resolution authorizing the purchase of the property recites among other things the following:

"WHEREAS, under date of April 25, 1929, Levitt Investment Company, * * * made a written offer to the City of Sioux City, Iowa, to sell the ground now leased by the City * * *, and known as Highview Municipal Golf Course for the sum of Forty-five Thousand Dollars ($45,000.00) * * *; and

"WHEREAS, it is advantageous for the City * * * to enter into a contract in accordance with the terms of said offer, * * *

"THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL of the City of Sioux City, Iowa, that the offer * * * hereinabove referred to, be, and the same is hereby accepted, and the Mayor and City Clerk are hereby authorized and directed to enter into a contract * * * for the purchase of said real estate * * *."

Neither the resolution authorizing the purchase of said real estate nor the contract for its purchase contains any direct statement as to the purposes for which the real estate was to be used. Within two months after its purchase, the use of the property as a golf course was discontinued, but the city continued making payments thereon for over two years, as provided in the contract of purchase. Appellee contends that it is just as fair to presume from the record that the property purchased was to be used as a city park as it is to presume that it was to be used as a municipal golf course.

The lower court held that the contract of purchase was valid and entered a decree for specific performance. The defendant appeals.

■■■ The only question raised against the validity of the contract is the contention that the property was purchased for use as a municipal golf course, and that when the contract of purchase was entered into, the city had no power to purchase or

acquire property for such use. The sole question before this court, therefore, is whether or not, under the law as it then stood, the city of Sioux City had a legal right to purchase the property in question. No constitutional question is involved.

It is conceded that at the time the contract was entered into, the only statutory authority for the purchase of the property was contained in section 6195 of the Code of 1927, which provides as follows:

"Cities and towns shall have power to purchase * * * pay for out of the general fund or the specific fund, as may be provided, enter upon and take any lands within or without the territorial limits of the city or town, for the following purposes:

"1. For parks, commons, cemeteries, crematories, or hospital grounds.

"2. * * *""

Appellant contends that because section 6195 of the Code of 1927 (section 880, Code of 1897), contains no provision *specifically* authorizing the purchase of property for a municipal golf course, that the city had no authority to purchase real estate for that purpose, and that the contract for the purchase of property for such purpose was, therefore, ultra vires and void.

In support of this contention, appellant also refers to the provisions of section 6606 of the Code of 1931, adopted by the 37th General Assembly in 1917, and section 6066-f1 of the Code of 1935, adopted by the 45th General Assembly, extra session, in March 1934.

Section 6606 of the Code of 1931 provides that:

"The council of any city * * * having a population of fifty thousand, shall have the power to establish in, and in connection with the parks, swimming pools, bathing beaches, bathhouses, * * * ice rinks, dance pavilions, shelter houses, wading pools, and river walls, and to pave, macadamize, and otherwise improve the roadways, drives, avenues, and walks in and through such parks."

This law was enacted in 1917 by the 37th General Assembly, chapter 194.

Section 6066-f1 of the Code of 1935 provides that:

"Cities and towns are hereby authorized and empowered to

own, acquire, construct, equip, operate and maintain within and/or without the corporate limits of such city or town, a sewage treatment plant or plants * * * also swimming pools *and/or golf courses,* and shall have authority to acquire by gift, grant, purchase, or condemnation, or otherwise, all necessary lands * * * therefor.''

This law was enacted in 1934 by the 45th General Assembly, extra session, chapter 71.

Appellant contends that because section 6606 (adopted in 1917) grants to cities and towns of fifty thousand population, the power to establish in, and in connection with the parks, swimming pools, bathing beaches, bathhouses, ice rinks, dance pavilions, shelter houses, wading pools, and river walls, etc., and because it does not include authority to establish a golf course, that such power was not included within the powers granted by section 6195 of the Code of 1927.

It is further contended that because the additional power to acquire a golf course was included in section 6066-f1 of the Code of 1935, it should necessarily follow that such power was excluded from the power granted in section 6195 to purchase land for parks, etc.

Such a conclusion does not necessarily follow. First, because swimming pools, bathing beaches, bathhouses, ice rinks, dance pavilions, shelter houses, wading pools, and river walls, could not in and of themselves as separate entities be considered parks, and for the further reason that if a golf course, as such, could be considered in the nature of a park, the reasoning would not apply.

The further contention is, that because section 6066-f1 of the Code of 1935 provides that cities and towns are empowered to own, acquire, and construct *swimming pools and golf courses,* * * * and to issue revenue bonds to pay the cost of such improvement *to be financed only through the federal government under certain conditions therein enumerated,* the power to acquire and operate golf courses was not included in section 6195 of the Code of 1927. Nor does such construction necessarily follow, because section 6066-f1 of the Code of 1935 also grants to cities and towns the power to acquire, construct and operate *swimming pools,* because that power was conferred on cities and towns in 1917, and long prior to the time section 6066-f1 of the Code was

adopted. See section 6606 of the Code of 1924 (37th General Assembly, chapter 194).

Therefore, if public golf courses can be considered parks, section 6066-f1 of the Code of 1935, which was adopted in 1934 by the 45th General Assembly, extra session, chapter 71, could not be held to imply that golf courses could not have been included within the meaning of the term ''parks'' contained in section 6195 of the Codes of 1927 and 1931.

That the construction contended for by appellant does not necessarily apply is also evidenced by the fact that section 6066-f1 of the Code of 1935 (being 45th G. A., Ex. Sess., Ch. 71) was enacted as an amendment to Chapter 111 of the Acts of the 45th General Assembly, which, by its enacting clause, shows that it was adopted to ''authorize cities and towns *to issue revenue bonds payable solely from the revenues of such works, as an emergency measure to be financed only through the Reconstruction Finance Corporation.*''

As this latter statute was enacted during the depression, and to provide labor for the unemployed, it is reasonable to conclude that the term ''golf course'' was included therein for the purpose of clarifying any doubt as to whether or not the power to purchase land was included in section 6195 of the Code, and so as to avoid any difficulty that might arise in financing the projects through the federal government. Rural Ind. School Dist. v. New Ind. School Dist., 120 Iowa 119, 94 N. W. 284.

It may be conceded that if the city of Sioux City acted beyond its power and had no authority to enter into the contract of purchase for the real estate in question, that the contract is not only voidable but void. McQuillin's Municipal Corporations (2d Ed.) Sec. 370, Sec. 1274; Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 91 N. W. 1081; Citizens Bank v. Spencer, 126 Iowa 101, 101 N. W. 643; Connolly v. Des Moines, 200 Iowa 97, 204 N. W. 284; Central Trans. Co. v. Pullman Palace Car Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; Williams v. City of Fargo, 63 N. D. 183, 247 N. W. 46, 53.

It must also be conceded that if the property purchased was to be used for a *park,* * * * the city had authority to purchase it and the contract would be valid.

I. The burden of proof is upon the appellant to show that the property in question was not purchased for use as a park under section 6195 of the Code of 1927.

Where the illegality of a contract is contended for, it must be alleged and proven by the party alleging it. The burden of proof is, therefore, upon appellant in this case, to establish the illegality of the contract. There is no presumption against the legality, or in favor of the illegality of contracts; on the contrary, there is a presumption in favor of its legality, and the facts consistent with its legality are presumed to exist, and "where a situation is explainable on the basis of legality it will be assumed that such is the true explanation." Under such presumptions, it is the general rule "that he who claims the existence of illegality must prove it." 22 C. J. 147, sec. 83; Brewster v. Davenport, 51 Iowa 427, 1 N. W. 737; In re Edwards' Estate, 58 Iowa 431, 10 N. W. 793; In re Brown's Estate, 92 Iowa 379, loc. cit. 382, 60 N. W. 659; Ryan v. Inc. Town of Lone Tree, 122 Iowa 420, 98 N. W. 287; Reed v. Anoka, 85 Minn. 294, 88 N. W. 981.

There is evidence in the case that when the city first acquired possession of this property, it was taken under a lease for the purpose of use *as a park or a public golf course.* The fact that an officer of one of the owners testified that *he understood* the property was to be used as a public golf course would not necessarily imply that it was to be so used permanently. Aside from such testimony and the reference to the property as the Highview Municipal Golf Course, there is no testimony tending to show that the property was not to be used ultimately as a park. The contract of purchase is silent as to the purposes for which the property was purchased. The resolution of the city council in authorizing the purchase of this property is also silent as to the purposes for which it was purchased.

After the property was purchased, it was used as a public golf course for a temporary period of less than two months, although the city continued in the possession of the property ever since. It can hardly be said that such temporary use as a golf course is sufficient to prove that it was purchased for the permanent use therefor. The recital in the lease that the property was to be used as a park or a golf course implies that it might be used for either purpose. Therefore, the rule that a contract will be presumed to have been entered into for a legal purpose would not be overcome by evidence that the property was used temporarily as a golf course, although the permanent use of the property for such a purpose should be held illegal.

We are constrained to hold that the appellant has failed to meet the burden of proving that the property was not purchased for use as a park. The illegality of the contract upon the ground that the property was not purchased for use as a park was, therefore, not established by sufficient evidence in this case.

■■■ II. Appellee contends that although it be assumed that the property in question was purchased for permanent use as a municipal golf course, the city would still have the power to purchase it under the provisions of section 6195, giving cities and towns the power to purchase real estate *"for parks, etc.,"* upon the theory that a liberal construction of the term "park" as used in this statute is sufficient to include a "golf course". The term "park" is not defined by the statute. It, therefore, becomes necessary to construe the meaning of that term.

It is a matter of common knowledge that "parks" are used by the public generally for recreation through many different games, such as tennis, pitching horse shoes, croquet, baseball, basketball, golf, walking, horseback riding, picnicking, and general outdoor exercise. The parks in the city of Des Moines have two large municipal golf links, and practically all large parks also contain baseball grounds.

Some courts have held that a golf links is a public utility within the meaning of a charter authorizing a municipal corporation to acquire public utility. Capen v. City of Portland, 112 Or. 14, 228 Pac. 105, 35 A. L. R. 589.

The word "park" is defined in Webster's New International Dictionary as "a piece of ground, in or near a city or town, kept for ornament and recreation and usually inclosed."

"While, in its ordinary and natural meaning * * *, the term may, both in this country and in England, be applied to private lands that have been inclosed as well as to lands that have been devoted to the *recreation and enjoyment of the public,* in its modern use, especially in this country, where its meaning is to be determined by the circumstances connected with its use, the term, as ordinarily used, has been variously defined as meaning a detached tract of land, generally of quite sizable proportions, devoted to purposes of ornamentation and recreation; * * * any piece of public ground, generally in or near a large town, laid out and cultivated for the sole purpose of pleasure or recreation,

without any regard to the * * * style of the arrangement; a piece of ground adapted and set aside for purposes of ornament, exercise, or amusement; a piece of ground inclosed for public recreation or amusement; * * * a tract of land set apart for ornament, or to afford the benefit of air, exercise, or amusement. The term has been held to include a grove and a public golf course, a playground and athletic field, or a tourist camp." 46 Corpus Juris, 1373 and 1374; Booth v. Minneapolis, 163 Minn. 223, 203 N. W. 625; Kupelian v. Andrews, 233 N. Y. 278, 135 N. E. 502; Phillips v. Laguna Beach Co., 190 Cal. 180, 211 Pac. 225; Bennett v. Seibert, 10 Ind. App. 369, 35 N. E. 35, 37 N. E. 1071; Riverside v. MacLain, 210 Ill. 308, 71 N. E. 408, 66 L. R. A. 288, 102 Am. St. Rep. 164; Kennedy v. Nevada, 222 Mo. App. 459, 281 S. W. 56; Ramstad v. Carr, 31 N. D. 504, 154 N. W. 195, L. R. A. 1916B, 1160; Northport Campmeeting Assn. v. Andrews, 104 Me. 342, 71 Atl. 1027, 20 L. R. A. (N. S.) 976; Sutcliffe Co. v. Louisville, 205 Ky. 718, 266 S. W. 375, and numerous other cases cited on pages 1373 and 1374 under section 2 of 46 Corpus Juris.

In Booth v. City of Minneapolis, 163 Minn. 223, 203 N. W. 625, loc. cit. 626, in discussing a question almost identical with that involved in this action, the Supreme Court of Minnesota said:

"A park is a pleasure ground for the recreation of the public to promote its health and enjoyment. A public golf course is for the same purpose. Parks are used for public recreation by indulgence in tennis, pitching horse shoes, croquet, baseball, kitten ball, golf, walking, horseback riding, picnicking, * * * and general outdoor exercise, * * * and other recreations. If ground be acquired for these purposes, it may be acquired for a part of them. It follows that the city has authority under its charter, * * * to acquire and maintain a public golf course. Capen v. City of Portland [112 Or. 14], 228 Pac. 105, 35 A. L. R. 589; Sutcliffe Co. v. City of Louisville, 205 Ky. 718, 266 S. W. 375; * * * Uses of Public Parks, see note 18 A. L. R. 1246."

If land can be acquired for these purposes under the provisions authorizing cities and towns to purchase parks, we see no reason for the conclusion that a golf links, which affords more open spaces for recreation and amusement than any of them should not be considered a park.

For the reasons hereinabove expressed, it is our conclusion that the judgment of the learned trial court was right, and the same is hereby affirmed.—Affirmed.

PARSONS, C. J., and ALBERT, HAMILTON, DONEGAN, and RICHARDS, JJ., concur.