Robert M. SIEGEL, The Headwaters, Inc., Ralph Swanson and Mary Swanson, husband and wife, Randal Swanson, Pam Fultz, Wesley Lock, Turkey Creek R.V. Village, a Limited Partnership, Glen Johnson Enterprises, Inc., Ozark Country Campground, Inc., America's Best Campground, Inc., Camp–A– Lot, Inc., Compton Ridge Campground, Inc.,

Branson Gallery, Inc., Johnette T. Seay, Old Shepherd's Campground, Inc., Don Coleman, George Gerth and Joan Gerth, husband and wife, Donald J. Lock and Loretta Lock, husband and wife, Plaintiffs–Appellants,

v.

The CITY of BRANSON, Missouri, a Municipal Corporation, Defendant–Respondent.

Harold HARVEY, Lloyd Graybill and Lynn Graybill, husband and wife, Glen Johnson Enterprises, Inc., Robert B. Klein and Sharon Klein, husband and wife, Plaintiffs–Appellants,

v.

The CITY of BRANSON, Missouri, a Municipal Corporation, Defendant–Respondent.

Nos. 20961, 21139.

Missouri Court of Appeals, Southern District, Division One.

Aug. 7, 1997.

Application to Transfer Denied by Court of Appeals Aug. 28, 1997.

Application to Transfer Denied by Supreme Court Sept. 30, 1997.

Kenneth W. Johnson, Twibell, Greene, Johnson & Kizer, Springfield, for plaintiffs–appellants.

Gary W. Allman, Cantwell, Allman, Smith & Trokey, L.L.P., Branson, for defendant–respondent.

PREWITT, Judge.

The principal dispute here is whether Defendant City of Branson may operate a campground. The trial judge determined that it could, finding these facts, which essentially are not in dispute:

1. Defendant City of Branson operates its two adjoining campgrounds as a part of its park system, under the direction of the Park Board and the Parks Director. These campgrounds provide, in addition to camping sites, the following functions:

   a. four fishing docks

   b. two boat docks

   c. launch ramps

   d. three pavilions

   e. one bike route

   f. several parking areas

   g. playground

   h. showers and restrooms

   i. gravel bar

2. The campgrounds are open to the public on a first come, first served basis, and no one is excluded, including residents of the City of Branson.

3. The campgrounds have been in operation for more than twenty-five years on land leased by the City of Branson.

Plaintiffs own private campgrounds in Branson or in the Branson area. Plaintiffs, in No. 20961, appeal from an order dismissing their claim for lack of standing as they are nonresidents of Branson. In Appeal No. 21139, Plaintiffs appeal from the trial court's

judgment denying their request for injunctive relief "because the campgrounds fall within the public purposes of the defendant municipality." There is no dispute in the latter appeal regarding the Plaintiffs' standing. As this appeal is decided on the merits, whether Plaintiffs in the initial appeal should have been allowed to proceed is moot.

The campground and other facilities on the site are open to the public, although two bathroom/shower facilities are reserved for campers only. Plaintiffs contend that the operation of the campground is improper because it competes with private businesses and it is beyond the authority of Defendant to operate a park or recreational facility. Defendant counters that the "campground is an integral part of the city park program providing recreation and leisure facilities for the public. The campground is maintained and operated under the authority of the City's power to develop and maintain parks and is within the public purpose functions of the City. . . ."

Defendant is a city of the fourth class, as authorized under Chapter 79, RSMo 1994, and that chapter's predecessors. Defendant contends that operation of the campground is a proper function within its authority to maintain a system of public recreation, including parks and other recreational grounds, under §§ 67.755.1 (Defendant cites " § 67.775.(1)," apparently erroneously), 79.390, and 90.010.1, RSMo 1994. The portions of the sections relied upon are set forth marginally.[1]

The powers of public subdivisions of the State are limited to those expressed or implied by statute, and any doubt is construed against the grant of power. *State ex rel. St. Louis Housing Authority v. Gaertner,* 695 S.W.2d 460, 462 (Mo.App.1985). Municipalities are creatures of statute and only have the powers granted to them by the legislature. *State ex rel. Mitchell v. City of Sikeston,* 555 S.W.2d 281, 288 (Mo. banc 1977). Courts generally follow a strict rule of construction when determining the powers of municipalities. *Id.*

That a municipality competes with private enterprise is not decisive if the municipality is engaging in activities that are in the public interest and for a public purpose. *Bowman v. Kansas City,* 361 Mo. 14, 233 S.W.2d 26, 35 (1950). Whether the activity is proper is not determined by whether private businesses are engaged in the same activity as the municipality. *Mitchell,* 555 S.W.2d at 289. "What constitutes a public purpose is primarily a legislative decision which will not be overturned by the courts unless arbitrary and unreasonable." *Associated Electric Co-op. v. Springfield,* 793 S.W.2d 517, 523 (Mo. App.1990). Missouri courts will defer to a city council when it declares a particular purpose to be a public one, and not interfere with a discretionary exercise of judgment unless it is clearly erroneous or unreasonable. *J.C. Nichols Co. v. City of Kansas City,* 639 S.W.2d 886, 891 (Mo.App.1982).

1. **§ 67.755. Subdivision may establish recreational system, restriction—tax levy—limits—excess property may be sold, exception.**—1. The governing body of any political subdivision may provide, establish, equip, develop, operate, maintain and conduct a system of public recreation, including parks and other recreational grounds, playgrounds, recreational centers, swimming pools, and any and all other recreational areas, facilities and activities, and may do so by purchase, gift, lease, condemnation, exchange or otherwise, and may employ necessary personnel, except that a board of education shall not obtain property for recreational areas or facilities by condemnation. Funds to be spent for such purposes may be set up in their respective budgets by any governing body.

**§ 79.390. Powers—water supply, market-places, city hall, prison, parks.**—The board of aldermen may . . . purchase or sell all public parks or other public grounds belonging to the city, and may purchase and hold grounds for public parks within the city, or within three miles thereof.

**§ 90.010. Parks, acquisition, funds, how obtained—tax, how levied and collected—amount of tax.**—1. Whenever any city desires to establish a park or pleasure grounds, the common council or mayor and board of aldermen of such city is hereby authorized and empowered to acquire property for such purposes by gift, purchase or condemnation of lands in such city or within one mile thereof, and for that purpose may borrow money and issue bonds in payment thereof, and shall by ordinance describe the metes and bounds of such lands to be purchased or condemned. Lands owned by such city may by ordinance be converted, set aside or appropriated for parks or pleasure grounds.

■ "No hard and fast rules exist for determining whether specific uses and purposes are public or private." *Cape Motor Lodge, Inc. v. City of Cape Girardeau*, 706 S.W.2d 208, 213 (Mo. banc 1986). "A municipal purpose is one which comprehends all activities essential to the comfort, convenience, safety and happiness of the citizens of the municipality." *Id.* at 214. The concept is elastic and keeps pace with changing conditions. *J.C. Nichols Co.*, 639 S.W.2d at 891; *Bowman*, 233 S.W.2d at 32. Thus, a definition of public purpose will likely vary with the character of the case in which the term is employed. *Bowman*, 233 S.W.2d at 32.

In *Aquamsi Land Co. v. City of Cape Girardeau*, 346 Mo. 524, 142 S.W.2d 332, 335 (1940), the court discussed the concept of a park:

'A park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment.... It need not, and should not, be a mere field or open space, but no objects, however worthy, ... which have no connection with park purposes, should be permitted to encroach upon it without legislative authority.... Monuments and buildings of architectural pretension which attract the eye and divert the mind of the visitor, floral and horticultural displays, zoological gardens, playing grounds, and even restaurants and resthouses, and many other common incidents of a pleasure ground contribute to the use and enjoyment of the park. The end of all such embellishments and conveniences is substantially the same public good. They facilitate free public means of pleasure, recreation, and amusement, and thus provide for the welfare of the community. The environment must be suitable and sightly or the pleasure is abated....'

■ In *Vrooman v. City of St. Louis*, 337 Mo. 933, 88 S.W.2d 189, 193 (1935), the court observed that "a public park [is] available to the use of every one. A contribution to its acquisition and establishment will be for a public purpose." The definition of a park is not limited to a public place of green lawns, walkways and benches. The definition is broad, and the question when applying this definition is whether a particular use of property serves a public purpose.

Plaintiffs rely on *Everett v. County of Clinton*, 282 S.W.2d 30 (Mo. banc 1955), *Kennedy v. City of Nevada*, 222 Mo.App. 459, 281 S.W. 56 (1926), and *State ex rel. Kansas City v. Orear*, 277 Mo. 303, 210 S.W. 392 (banc 1919), in support of this proposition. These cases, however, do not prohibit municipalities from engaging in any business, but only from engaging in private business. They distinguish between businesses operated for private and public purposes.

Courts consider a number of factors in determining whether a use is for a public purpose. The court in *Bowman*, 233 S.W.2d at 33, discussed them at length:

'In order to constitute public use, it is not necessary that the whole community or any large part of it should actually use or be benefited by a contemplated improvement. Benefit to any considerable number is sufficient.... Nor does the mere fact that the advantage of a public improvement also inures to a particular individual or group of individuals deprive it of its public character.'

Some authorities hold that courts 'must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use' ... [citations omitted] 'To be guided solely by whether a given activity had, at some previous time, been recognized as a public purpose would make the law static. Such a standard would compel us to retain in the law, as appropriate for pubic expenditure, activities which have ceased to be of public concern; and would prevent us from adopting new public functions regardless of how essential to the public welfare they may have become by reason of changed conditions. Nor can we be governed alone by the fact that only a portion of the public

will be directly benefited or benefited in a greater degree than the public generally.' [citations omitted]

■ If it is in the public interest and for a public purpose, a city may be authorized by the state to engage in a business commonly carried on by private enterprise; and in such case such city may levy a tax to support such business and compete with private interests engaged in a like activity. *Id.* at 35.

A variety of uses have been held to be for a public purpose. *See Cape Motor Lodge, Inc.,* 706 S.W.2d at 214 ("multi-use center"); *J.C. Nichols Co.,* 639 S.W.2d at 891–92 (lease of city-owned historic building to a private lessee); *Bowman,* 233 S.W.2d at 35 (off-street parking stations); *Aquamsi Land Co.,* 142 S.W.2d at 335–36 (athletic fields, an arena, and a horse racing track); *Vrooman,* 88 S.W.2d at 193–94 (contribution of city funds to a national park [the Gateway Arch]); in other jurisdictions: *Huron–Clinton Metropolitan Authority v. Attorney General,* 146 Mich.App. 79, 379 N.W.2d 474 (1985) (water slide); *Behrens v. City of Spearfish,* 84 S.D. 615, 175 N.W.2d 52 (1970) and *State ex rel. Minner Co. v. Dodge City,* 123 Kan. 316, 255 P. 387 (1927) (tourist camps); *Summit County Historical Society v. City of Akron,* 115 Ohio App. 555, 183 N.E.2d 634 (1961) (ice skating rink); *Starlight Corp. v. City of Miami Beach,* 57 So.2d 6 (Fla.1952) (auditorium). *See also* McQuillan on Municipal Corporations § 28.52.10.

Unsurprisingly, public purpose analysis has also yielded a number of cases in which the use in question was held not to be for a public purpose. *See Everett,* 282 S.W.2d at 36–37 (sale of crushed stone from a public quarry); *Kennedy,* 281 S.W. at 60 (tourist camp); *Orear,* 210 S.W. at 400 (ice manufacturing plant); in other jurisdictions: *John Wright & Associates v. City of Red Wing,* 254 Minn. 1, 93 N.W.2d 660 (1959) (movie theater); *Nash v. Town of Tarboro,* 227 N.C. 283, 42 S.E.2d 209 (1947) (hotel).

■ In *Kennedy,* the operation of a "tourist camp" by the city of Nevada, Missouri, was held improper. There, transients were allowed to camp on real property owned by the city and the city maintained for them four shower baths and two toilets. Noting that certain restrictions as to the time of entrance or behavior of those in a public park are valid, the Court determined that a tourist camp is not a public park where it is only used for persons traveling, "and for the exclusive use of transients and nonresidents of the city." 281 S.W. at 58. The Court determined that this was "substantially ... an outdoor hotel" beyond the authority of a municipality "especially where the inhabitants of the city are excluded" 281 S.W. at 60. Cases appearing contra to *Kennedy* are *Minner Co.* and *Behrens.*

We decline to follow *Kennedy,* as to whether a campground may be operated by a city, for several reasons. At the time of that decision there was no similar statute to Section 67.755.1, RSMo 1994. The statute was enacted in 1961. L.1961 p. 304. The Court in *Kennedy* emphasized that the tourist camp was for nonresidents only. Here, there is no restriction as to who may use the campground. The recreational aspect of camping is now more established. It appears that at the time of the *Kennedy* case camping was primarily a means of reducing the cost of traveling, whereas now it is frequently used as recreation, sometimes to save money while traveling or visiting an area.

We conclude that a campground is a "recreational" ground or area under Section 67.755. The statute does not limit the City to parks, but allows other recreational areas. The campground is "recreational" and although at least portions of the campground appear to be park-like, it does not have to be a park as commonly understood. Charging for its use, and perhaps making a profit, and restrictions upon entry after certain hours does not prevent the area from being recreational. As earlier mentioned, *Kennedy* noted that restrictions as to time and entrance and behavior of persons present are acceptable.

Whether the City is engaged in a proper activity is not determined by whether it competes with private businesses, but whether it is an authorized public purpose. Here, the City is engaged in an authorized recreational activity and competing with private busi-

nesses does not prohibit the City from doing so.

The appeal in No. 20961 is dismissed as moot. The judgment appealed from in Appeal No. 21139 is affirmed.

BARNEY, P.J., and GARRISON, J., concur.