THE MINAMAX GAS CO. *v.* THE STATE, EX REL. McCURDY, PROS. ATTY.

(Decided June 1, 1929.)

*Mr. A. R. Johnson* and *Mr. William J. Meyer,* for plaintiff in error.

*Mr. Dustin W. Gustin,* prosecuting attorney, for defendant in error.

MAUCK, J. The prosecuting attorney of Scioto county in his official capacity brought an action in the name of the state against the Minamax Gas Company, in which he pleaded as a first cause of action that Scioto county had a legal estate in and was entitled to the possession of certain property in the petition described, and that the Minamax Gas Company unlawfully kept the county out of possession of said premises. By a second cause of action he sought to recover the reasonable rents, issues, and profits for that unlawful occupation. The defendant demurred on the two grounds that plaintiff had no legal capacity to bring or maintain the action, and that no cause of action was set out in either of the alleged causes of action set up in the petition. This demurrer was overruled. The defendant thereupon answered, denying generally both causes of action, and pleading as an additional defense that on or about March 18, 1927, the county commissioners of Scioto county represented that they had control of the real estate in question, aver-

ring that the property at that time was unoccupied and used as a depository of rubbish, and that the commissioners would lease to the defendant this property at the sum of $50 per year, reserving the right, when said property might be needed as an approach to a bridge adjacent thereto, that defendant should surrender possession; that thereupon the defendant at great expense built walls to protect the property, filled it in, improved and paved it, and constructed thereon a gasoline station, at an actual cost to the defendant of many thousands of dollars. It is further pleaded that the defendant paid one year's rental, and has since tendered and offered to pay additional rental, but that the county commissioners had been advised by the prosecuting attorney that the lease to the defendant was unlawful, inasmuch as it had not been made after advertisement, and that the commissioners for that reason, and that reason alone, passed a resolution setting out that said lease was null and void. Defendant asserts that it has a valid and binding lease upon the property. It further pleads that the county and its officers, by making the lease and standing by and knowing of the expenditures being made by the de fendant, are estopped from challenging the lease and disputing defendant's possession of the property, that the property is not now needed for bridge purposes, or other public purposes, and that the plaintiff is now estopped from asserting that the defendant's possession is unlawful. This answer was met by a reply denying its every allegation. A jury was waived, trial was had, and plaintiff recovered a judgment for possession of the property, together with a judgment for $490 under the second

cause of action. This proceeding is to reverse that judgment.

The first question arises upon the demurrer to the petition, by which the right of the prosecuting attorney to bring and maintain this action was challenged. It is true that this action was not authorized by the county commissioners, and that most actions affecting the county's interest in property must be brought by the commissioners. The very fact, however, that the commissioners and the prosecuting attorney might view with different eyes the propriety or necessity of bringing a particular action led to the enactment of Section 2921, General Code. That section is quite comprehensive. It authorizes the prosecuting attorney to bring an action in many different sorts of circumstances. It consists of but one long involved section, but excising some of the language, not pertinent to this case, it reads:

"Upon being satisfied * * * that any property, real or personal, belonging to the county is being illegally used or occupied, * * * the prosecuting attorneys of the several counties of the state may apply, by civil action in the name of the state, to a court of competent jurisdiction, * * * to recover, for the use * * * and benefit of the county * * * such real or personal property so used or occupied * * *."

This was authority for bringing the action by the prosecuting attorney, and the demurrer touching his capacity to bring and maintain the action was properly overruled. The demurrer was properly overruled so far as it assailed the sufficiency of the petition. The petition was in the conventional form,

and no reason has been suggested why it does not state causes of action if it be found that the action was brought by one competent to bring it.

Upon the trial of the case it developed that negotiations for leasing this property were opened by the defendant, who informally conferred with the commissioners in August, 1926. The record shows that the commissioners individually assented to the leasing of the property at $50 per year, and that thereupon the defendant entered upon the property and placed valuable improvements thereon for the purpose of operating a gasoline filling station. On March 18, 1927, after these improvements had been made, at least in part, the commissioners entered into a lease with the defendant, and later a lease of correction was made by the commissioners, dated March 30, 1927. The actual time of its signature is uncertain, but it was acknowledged by the lessee on June 29, and by the commissioners on July 5, 1927. This corrective lease embodied the same terms as the March lease, and was made because the lessee represented that some changes in its internal corporate affairs required it. The lease provided for the demise of the property for a term of ten years at an annual rental of $50 per year, and among other provisions recited:

"It is further mutually understood and agreed that this lease may be terminated by the lessors or their successors in office at any time that they may so desire, but that in so doing a written notice of such termination shall be served upon the lessee and it shall not be compelled to remove from the premises until the expiration of ninety days after the receipt of such notice."

On September 29, 1927, the board of commissioners, at the instance of the prosecuting attorney, adopted a resolution "that said two leases of March 18, 1927, and March 30, 1927, be and the same are hereby cancelled and that the ninety days' written notice of cancellation provided for in said leases be given to said lessee."

Thereupon notice pursuant to said resolution was served upon the lessee. The resolution quoted was preceded by a whereas to the effect that the prosecuting attorney had advised the board that the leases were illegal because made without advertisement, and indicating that the cancellation was being made because the prosecuting attorney had so advised.

The claim of the prosecuting attorney in this action is that the lease is wholly void, either because there is no statutory power in the commissioners to lease county property, or because, if there is such power, it proceeds from Section 2447, General Code, and that the conditions imposed by that section were not complied with.

Counties have generally been held to be agencies of the state for the performance of functions of the state, and, while necessarily clothed with some corporate powers, to have only such powers as are conferred by statute. *Board of Commissioners* v. *Gates,* 83 Ohio St., 19, 93 N. E., 255. In other jurisdictions counties have no power to alien property unless express legislative authority exists therefor. See note in Ann. Cas., 1913E, 528. In Ohio, however, there was early recognition of the fact that, while counties have no power to acquire property not needed for county purposes, the county might find itself actu-

ally possessed of property for which there was no public need. In such case, said the Supreme Court in *Reynolds* v. *Commissioners of Stark County,* 5 Ohio, 204, if the property is not held in trust, and not dedicated to public use, it may be aliened, because the right to alien follows necessarily as an incident to ownership. Later the General Assembly enacted what is now Section 2447 *et seq.,* General Code, prescribing the method by which county commissioners may sell real estate which is not needed for county purposes.

It is claimed in this case, that, as a lease is in law a sale of an interest in real estate *(Brenner* v. *Spiegle,* 116 Ohio St., 631, 157 N. E., 491), a valid lease may be made by the commissioners only by complying with the terms of the statute referred to, and, as the terms of that statute require competitive bids after due advertisement, the lease in question is invalid because it was effected without such competition or advertisement. Other counties have found it convenient and profitable to temporarily lease property for which there was no immediate need, and we hesitate to unequivocally condemn a practice that properly carried out results in even a slight public advantage. Moreover, it appears a forced interpretation to say that the General Assembly, in regulating the sale of county real estate for which the county has no use, intended to inhibit the leasing of property which the county could not sell. This appears to us not only a strained construction, but one not necessary to fully protect the public interests. Until the commissioners find that county real estate is "not needed for public use" all such property must be deemed of

some potential use to the county. So long as it has such potential use, the interests of the county do not require its sale, nor does Section 2447 permit its sale. In the absence of a finding that would enable the commissioners to sell, title must be retained by the county, but, under the doctrine of the *Reynolds case, supra,* there is no reason why it should not be temporarily leased, subject to repossession whenever the public needs so require. The commissioners could not, however, lease for a definite term and thereby embarrass either themselves or their successors in using the property for public purposes.

In the instant case the commissioners did not find that such conditions obtained as would permit a sale of the property. On the contrary, they expressly recognized the probability that it would be necessary for them to recover possession, and this they did by the paragraph in the lease empowering them to cancel that instrument at will. In September following they exercised their right to cancel, gave notice accordingly, and by the terms of the lease they thereby became reinvested with the right of possession. Thus, so far as the legal rights of the parties are concerned, the plaintiff, at the time this suit was brought, was entitled to possession.

The defendant, however, by the fourth defense of its answer, attempted to set up an equitable defense against the plaintiff's technical legal right to eject. This appears to be in the nature of an estoppel having two phases: The first is that the commissioners terminated the lease because they thought it was illegal, when it in fact was legal; and the second is because the lessee, relying on its lease, has made

large expenditures in improving the property, and the county authorities have permitted it to do so without advising it that the lease would be canceled. The first defense is unsound, because one exercising a legal right is not bound to have a sound reason therefor; nor any reason at all. One's motives in doing what one has a right to do are not open to judicial inquiry. *Hamilton, G. & C. Traction Co.* v. *Parish,* 67 Ohio St., 181, 189, 65 N. E., 1011, 60 L. R. A., 531; *Nicholson* v. *Franklin Brewing Co.,* 82 Ohio St., 94, 91 N. E., 991, 137 Am. St. Rep., 764, 19 Ann. Cas., 699. The other defense likewise and for like reasons fails. The commissioners have elected to terminate the lease, and that power having been given them by the contract under which the lessee claims, the lessee cannot inquire into the motives leading to the termination of its tenure. It contracted with that possibility in mind, and equity cannot interpose to prevent a party to a contract from pursuing his rights thereunder. The editor says, in a note in Ann. Cas., 1916B, 307:

"It is self-evident that when a party to a lease is given an option without restriction to terminate the lease or a right to terminate it on the happening of a contingency, he may exercise the option without restriction in the one case, or in the other on the happening of the contingency. * * * It seems that the motive inducing a party to a lease to exercise an option to terminate it cannot be inquired into."

The so-called equitable defenses were accordingly not sound.

There is another view of the case, however, that we feel no inclination to ignore. The trial court

found generally for the plaintiff. Presumably that court treated the claimed estoppel as good, if true, but found it not true in fact, or, if true, that the conduct of the defendant was such that equity would not listen to its plea because its conduct showed its hands unclean. The answer was in essential parts untrue. It was not true that the commissioners sought the defendant and induced it to enter into the contract. The defendant was the aggressor, and solicited the lease from the individual commissioners when not in session. It was not true that the improvements made on the property were made in reliance on the lease, for they were made before the lease was entered into and before it was authorized by the commissioners as a board. The improvements were consequently made upon the private and personal commitments of the individual commissioners, which, of course, had no legal effect.

But, if the defendant had a defense of an apparently equitable nature, it would be in no position to assert it. To defeat the clear legal rights of the county, it seeks to show by parol that the county ought not be permitted to work its cancellation because of things the commissioners knew and did. The county cannot enter that field on fair terms. One of its agents has been so compromised by the defendant that the public cannot be assured which of the two masters he would serve. It is admitted that, before the lease in question was consummated to the satisfaction of the lessee, private arrangements were made between the lessee and one of the commissioners by which the lessee, or its president, loaned to that commissioner $500. The testimony shows that, when these negotiations for this lease

were begun, these parties had no acquaintance, and that before they were concluded the commissioner was soliciting and receiving this money from the defendant's president. Moreover, the record shows that twenty-four days after the last lease was acknowledged by the commissioners the same commissioner entered the employment of the lessee. He received $250 per month for his services, but he did not by his services, or otherwise, repay the $500 borrowed. He continued in that employment until he was discharged by telegram on January 11, 1928. This suit was filed January 12, 1928. The facts are not referred to as making a case of fraud requiring the cancellation of the lease. The plaintiff did not ground his case in fraud. They are referred to because the facts and the fair inferences arising therefrom would prevent the defendant from resorting to equitable principles to defeat the exercise of a legal right, if the equitable defense were otherwise open to it. The defendant has made it impossible for a court of equity to resort to its peculiar processes for the avoidance of technical rights. The defendant's hands are not sufficiently clean for it to be heard in derogation of the strict letter of the contract.

The judgment ejecting the defendant was right. In view of our interpretation of the lease and the rights arising thereunder, the judgment in money for use of the premises was erroneous. The contract was valid until canceled. The defendant had paid $50. This was sufficient for one year's rental. By the terms of the lease this rental began on March 30, 1927, and ran to March 29, 1928. The $50 rental had consequently not been consumed when the ac-

tion was begun in January, 1928. The evidence shows, however, that the lessee had been in possession for several months prior to March 30, 1927. Roughly the defendant had enjoyed possession for approximately the time paid for. The judgment of the common pleas is consequently modified by vacating all that part thereof that relates to a money judgment, and the county is remitted to its right to recover in a separate action for the use of the property from January 12, 1928.

*Judgment modified and affirmed as modified.*

HOUCK and LEMERT, JJ., concur.

Judges HOUCK and LEMERT, of the Fifth Appellate District, sitting in place of Judges MIDDLETON and BLOSSER, of the Fourth Appellate District.