TOWNSHIP OF GROSSE ILE v. DUNBAR
& SULLIVAN DREDGING CO.

1. Zoning—Ordinance—Dumping—Construction of a Dike or Fill.
    Zoning ordinance which prohibits dumping of soil, sand, clay,
    rubbish, or other matter on the spillways or flood plains of any
    natural stream or watercourse, or on any area between the lower
    and upper banks of such streams or watercourses, includes
    dumping of such matter for the purpose of constructing a dike
    or creating a fill (Township of Grosse Ile Zoning Ordinance,
    § 4.15).

2. Same—Ordinance—Nonconforming Use—Question of Fact.
    Whether an activity warrants classification as a nonconforming
    use under a zoning ordinance necessarily involves an imprecise
    determination, and it must be decided after consideration of
    the facts of each case.

3. Same—Ordinance—Nonconforming Use—Dumping and Filling
    Operation.
    Defendant must show that its dumping operations for the pur-
    pose of creating a dike and fill were being carried on in a
    reasonably substantial manner at the time plaintiff township's
    zoning ordinance became effective before the operations can
    be deemed a nonconforming use.

4. Same—Ordinance—Nonconforming Use—Certificate by Town-
    ship—Dredging Operation.
    Certificate of registration of valid nonconforming use issued by
    a township listing as valid activities the disposal of dredging
    and industrial wastes, and a source of sand, rock, soil, clay,
    and gravel for sale, storage, and transfer held, not an acknowl-
    edgment by the township of the legality of defendant's
    dredging operations for the purpose of creating a fill which

---

References for Points in Headnotes

[1] 58 Am Jur, Zoning § 11.
[2–4] 58 Am Jur, Zoning § 178 et seq.
[5, 6] 56 Am Jur, Waters § 459.

calls for the dumping of 2 million cubic yards of material over a 50-year period, even though the application for a permit to complete the project was on file when the certificate of nonconforming use was issued.

5. WATERS AND WATERCOURSES—RIPARIAN OWNER—NAVIGABLE RIVER —TITLE TO BED—PUBLIC TRUST.

The title of a riparian owner in the bed of a navigable river is subject to a public trust for the preservation of the public right in navigation, fishing, and other activities; what constitutes a violation of this trust is determined by the facts of each case.

6. SAME—RIPARIAN OWNER—NAVIGABLE RIVER—TITLE TO BED—PUBLIC TRUST—ENCROACHMENT—INJUNCTION.

A real and substantial relationship to a paramount trust purpose must be shown before the state may enjoin encroachments in navigable waters by riparian owners; but substantial value for public use need not be shown in order for there to be a finding that the public trust has been impaired.

Appeal from Wayne, Bohn (Theodore R.), J. Submitted Division 1 October 7, 1968, at Detroit. (Docket No. 1,811.) Decided January 30, 1969. Rehearing denied May 28, 1969. Leave to appeal denied December 29, 1969. See 383 Mich.

Complaint by township of Grosse Ile, Wayne county, a municipal corporation, and certain taxpayers of the township, against Dunbar & Sullivan Dredging Co., a New York corporation, to enjoin certain of defendant's dredging operations on Stony Island. The people of the State of Michigan, on the relation of Gerald E. Eddy, director of the Department of Conservation, intervened as a party plaintiff. Injunction granted. Defendant appeals. Affirmed.

*Moll, Desenberg, Purdy, Glover & Bayer,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Nicholas V. Olds*

and *Jerome Maslowski,* Assistant Attorneys General, for intervening plaintiffs.

*Goetz, Goetz, Rahaley & Dewey* (*Mayer & Mayer,* of counsel), for defendant.

J. H. GILLIS, P. J. Defendant is the riparian owner of Stony Island which is located in the Detroit River east of Grosse Ile. In 1925 the war department, upon application by defendant, issued a permit through the district engineer of the United States Army, corps of engineers, allowing defendant to conduct filling operations within a designated area around Stony Island. The plans attached to the permit indicated that the proposed fill was to consist of almost 2 million cubic yards of rock, mud and clay. The filling operations were commenced by defendant in 1925.

The permit was valid for 3 years and was renewed by defendant in 1928 and again in 1931. In 1932, defendant requested the establishment of a permanent line of permissible fill to avoid the necessity of permit renewals since the completion of the fill would extend over a long period of time. After a public hearing, the district engineer was authorized in 1933 to establish a harbor line which finally went into effect in 1935.

Stony Island lies within the territorial limits of the Township of Grosse Ile. On October 13, 1958, the township adopted a zoning ordinance which zones Stony Island for light manufacturing and single-family residence. The ordinance, which became effective on November 19, 1958, further provided that applications for a certificate of registration of a valid nonconforming use should be filed within 1 year from the effective date of the ordinance and that such certificates should issue within 30 days following the filing of an application.

In October, 1959, defendant filed with the township its nonconforming use registration and petition for certificate with respect to its activities on Stony Island. The petition stated that among the operations which the company was engaged in at the time the ordinance was enacted were: "(r) disposal of dredging and industrial wastes; (s) source of soil, sand, clay, rock and gravel for sale, and storage and transfer of same for ourselves and others." As of May, 1961, 1–1/2 years later, the certificate of nonconforming use had not yet been received by defendant.

As enacted in 1958, § 4.15 of the zoning ordinance contained the following prohibition:

"No soil, sand, clay, gravel, trash, rubbish or waste material shall be dumped on the spillways or flood planes [*sic*] of any natural streams or water courses, * * * except on approval of the township zoning board, showing that such dumping will not result in damage to other property within the township of Grosse Ile and will not be injurious to the public health, safety and welfare."

Section 4.15 was amended by ordinance adopted on June 12, 1961. The amendment added the following to the activities requiring a permit:

"* * * the construction, enlargement or alteration of any sea wall or fill in relation thereto."

Thereafter, the township zoning inspector inspected defendant's activities at Stony Island as a preliminary to the issuance of a certificate of nonconforming use. The purpose of the inspection was to determine whether there had been any expansion of the nonconforming uses on Stony Island beyond those which defendant had listed in its application for a permit as existing at the time the ordinance was originally enacted.

While the certificate of nonconforming use was still pending, the township supervisor notified defendant that in his opinion it was necessary to get a permit to build the dike and make the fill at the south end of the island notwithstanding defendant's insistence that no additional permit was needed since the work was part of the nonconforming uses which were in existence when the ordinance was enacted. Defendant stopped operations south of the island and applied for a permit on June 29, 1961, listing as the nature of the proposed work:

"Repairing, replacing and extending a dike to prevent seepage and escape of Stony Island present or future fill, into the Detroit River in accordance with permit issued by U. S. Government May 21, 1925, and later renewed. This will not result in damage to other property or be injurious to public health, safety and welfare."

The certificate of registration of valid nonconforming use which had been applied for in October, 1959 was finally issued by the township zoning inspector on July 15, 1961. The certificate stated the use of Stony Island to be "dredging and allied activities."

After a hearing before the township zoning board on defendant's application for a permit to repair, replace and extend the dike, the board, on August 7, 1961, denied the application:

"Inasmuch as it does not conform with the spirit and purpose of the zoning ordinance of the Township of Grosse Ile, as expressed in § 1.02 of the zoning ordinance dated October 13, 1958, as amended, and further, said application does not carry out the best interests of the people of the Township of Grosse Ile as determined by § 12.02 of the zoning ordinance."

Defendant nevertheless unloaded material on the dike south of Stony Island during the spring and summer of 1962.

On August 29, 1962, the township of Grosse Ile and certain resident property owners of Grosse Ile filed a bill of complaint in Wayne county circuit court to enjoin defendant from violating the zoning ordinance by constructing the dike and filling in the area south of Stony Island after its request for a permit to do so had been denied. Plaintiffs also sought an adjudication that defendant was guilty of maintaining a nuisance and an order abating the nuisance by the removal of the existing dike.

After an unsuccessful attempt to remove the action to the Federal district court for the eastern district of Michigan, defendant answered the complaint and alleged that the dike and fill operations south of Stony Island were commenced long before the adoption of the zoning ordinance and were within the purview of the permit of nonconforming use issued by the township.

The State of Michigan intervened as a party plaintiff and alleged that the waters of the Detroit River and its submerged lands are subject to a public trust and constitute a natural resource. It further alleged that since the construction of the dike and the fill operations south of Stony Island would impair the public trust, the wildlife habitat and the public use of the area, it was the duty of the conservation department, pursuant to PA 1921, No 17, § 3, as amended (MCLA § 299.3, Stat Ann 1967 Rev § 13.3), to preserve and protect the waters in question from unlawful use and occupancy. Defendant denied that the public trust, wildlife habitat or public use of the area would be impaired. In response to both complaints, defendant alleged that the purpose of the dike was to make an enclosed and protected

harbor for mooring and floating equipment which would open up a channel for small boat navigation.

The trial court entered a judgment permanently enjoining defendant from filling any part of the Detroit River south of Stony Island beyond the line of a joint survey made pursuant to stipulation of the parties. It was further ordered that defendant be permanently enjoined from dumping any material south of Stony Island between the line of the joint survey and the United States harbor line and that the nuisance created by the existing dike south of the island be abated by defendant removing it within 30 days from the date of judgment. From the judgment entered, and from the denial of defendant's motion for a new trial, defendant appeals.

The question for our consideration is whether the proposed dike and fill operations by defendant south of Stony Island may lawfully be enjoined either by enforcement of the zoning ordinance or by invocation of the public trust doctrine. The trial court found that defendant's operations could be curtailed under both theories and thus it appears that if either theory is applicable and was properly applied, the decision of the trial court must be affirmed.

With respect to enforcement of the ordinance, defendant contends that the trial court erred by using November 19, 1958, the effective date of the ordinance as originally enacted, to determine whether the dike and fill operations constituted a valid nonconforming use under the ordinance. The complaint alleged a violation of § 4.15 of the ordinance, as amended, which did not go into effect until July, 1961, and defendant contends that there was ample evidence to show that the construction of the dike and the fill had commenced prior to that time. Defendant further contends that even if the November, 1958, date is proper, it was error for the trial

court to find, "The record is completely devoid of any evidence that a dike was under construction on November 19, 1958."

The initial question, therefore, is whether the dike and fill operations were contrary to the provisions of § 4.15 of the ordinance as originally enacted. That section provided that:

"No soil, sand, clay, gravel, trash, rubbish or waste material shall be dumped on the spillways or flood planes [*sic*] of any natural streams or water courses, or on any area between the lower and upper banks of such streams or water courses, except on approval of the township zoning board."

Reference is made only to "dumping" which includes dumping to construct a dike or create a fill. Moreover, defendant does not deny that the ordinance as originally enacted pertains to its dike and fill operations; rather, defendant contends that there is sufficient evidence to show that those operations were being performed when the ordinance was enacted in 1958 and thus constitute a valid nonconforming use under the ordinance.

There is testimony in the record that defendant had dumped material in the area south of Stony Island intermittently from the time it obtained its permit from the war department in 1925 until the ordinance was enacted in 1958. The trial court's conclusion that there was no evidence that a dike was under construction on November 19, 1958, need not, however, be given an interpretation as narrow as defendant suggests. Whether an activity warrants classification as a nonconforming use necessarily involves an imprecise determination.

In the words of the trial court, "there is no evidence that any dike was under construction on November 19, 1958. There was some testimony with

reference to some dumping in the general area but no dike could be observed above water." Defendant urges that the dike need not have been visible on the day the ordinance went into effect and that seasonal operations also qualify as nonconforming uses. The initial consideration, however, is not whether defendant's operations were seasonal or visible but whether they were carried on to a sufficient extent to be deemed nonconforming. Occasional dumping in furtherance of the proposed dike and fill does not establish *per se* a nonconforming use. It must be shown that the dike and fill operations were being performed in a reasonably substantial manner at the time the ordinance was enacted to be deemed a nonconforming use. *Fruitport Township* v. *Baxter* (1967), 6 Mich App 283; *Fredal* v. *Forster* (1967), 9 Mich App 215. The determination of the trial court may reasonably be interpreted to mean that the court was not persuaded by the evidence that the dike and fill operations had been carried out in a reasonably substantial manner prior to November 19, 1958. After a careful reading of the record, we are of the opinion that the trial court's determination should not be disturbed. *Fruitport Township* v. *Baxter, supra.*

Defendant further contends that the dike and fill operations were within the contemplation of the certificate of registration of valid nonconforming use issued to defendant by the township. In its petition for the certificate defendant listed among its operations:

"(r) Disposal of dredging and industrial wastes;
"(s) Source of soil, sand, clay, rock and gravel for sale, and storage and transfer of same; for ourselves and others."

Item (r) is the only one of the itemized uses in which the word "dredging" appears. The certificate,

when issued, permitted "dredging and allied activities."

The township's position is well taken that defendant's application for a permit failed to put the township on notice that defendant was claiming the right to erect the dike and create the fill south of Stony Island. It is certainly not readily apparent that "disposal of dredging and industrial wastes" contemplates a dike and fill operation which calls for the dumping of almost 2 million cubic yards over perhaps a 50-year period. That defendant's request for a permit to complete the proposed dike and fill was pending when the nonconforming use certificate was issued does not mean that the dike and fill operations came within the scope of the permit. The trial court found that defendant knew that the fill and extension of the dike were not part of the nonconforming use certificate. The record does not indicate that the finding was clearly erroneous.

As for the requested permit to complete the dike and fill, defendant contends that the township had no reasonable or justifiable basis for denying the permit. The finding of the trial court was to the contrary. The record shows that the township zoning board, in denying the permit, considered that the dike and fill would take perhaps 50 years to complete and "would not carry out the best interests of the people of the township of Grosse Ile as determined by § 12.02 of the zoning ordinance." Under the ordinance the zoning board must consider whether or not the use would be injurious or detrimental to the surrounding neighborhood and whether or not the use is in accord with the spirit and purpose of the ordinance. Defendant cites *Keller* v. *Township of Farmington* (1959), 358 Mich 106, and *Plum Hollow Golf & Country Club* v. *Southfield Township* (1954), 341 Mich 84, for the proposition that the

denial of the permit to fill is a deprivation of defendant's property rights without due process of law because the area south of Stony Island is rendered unusable for any practical purpose. Both cases are distinguishable on their facts and do not compel a finding that the denial of the permit was unreasonable or arbitrary when applied to defendant's dike and fill operations. A review of the record does not persuade us that the finding of the trial court was clearly erroneous.

Defendant finally contends that the application by the trial court of the public trust doctrine to prohibit the dike and fill operations was unreasonable and therefore constituted error.

The title of a riparian owner in the bed of a navigable river is subject to a public trust for the preservation of the public right of navigation, fishing, and other activities, *Collins* v. *Gerhardt* (1926), 237 Mich 38; *Morgan* v. *Kloss* (1928), 244 Mich 192. What constitutes a violation of the public trust is necessarily a matter of *ad hoc* judicial determination depending on the facts in a particular case.

In 1965, the legislature passed the "inland lakes and streams act." PA 1965, No 291 (MCLA § 281.731 *et seq.,* Stat Ann 1968 Rev § 11.451 *et seq.*).

While the statute is inapplicable here because the present case commenced prior to the enactment of the statute, defendant urges that this Court take notice of the legislative determination that only unreasonable impairments of the public trust may be enjoined. We need not look to the statute for that proposition, however, for the Supreme Court recognized years ago that a "real and substantial relation to a paramount trust purpose" must be shown before the State may enjoin encroachments in navigable waters by riparian owners. *Hilt* v. *Weber* (1930), 252 Mich 198.

The trial court found that the waters of the Detroit River in the area of the proposed dike and fill south of Stony Island had been and were still being used by the public for boating and fishing and constituted a fish and game habitat subject to protection under the public trust doctrine. Defendant contends that the area is of minimal value to the public for boating, fishing and duck hunting and offered testimony to support this contention. Defendant further contends that there are many other areas in the Detroit River for boating, hunting and fishing and that a great deal of fill has already been made along the United States' side of the Detroit River. We must, however, confine ourselves to a consideration of the facts of this particular case. A determination that the public trust would be impaired logically requires a consideration of the value of navigable waters for public use and the extent of such use. Defendant offers no authority, however, to indicate that substantial value for public use must be shown in order for the public trust to be impaired. The trial judge personally reviewed the area of the proposed dike and fill and there is testimony in the record to support the judgment rendered. There is nothing in the record to indicate that the trial court's determination was unreasonable or clearly erroneous.

Affirmed. No costs, a public question being involved.

R. B. BURNS and KELLEY, JJ., concurred.