HURON-CLINTON METROPOLITAN AUTHORITY v ATTORNEY
GENERAL

Docket No. 79551. Submitted May 16, 1985, at Detroit.—Decided
October 7, 1985. Leave to appeal applied for.

The Huron-Clinton Metropolitan Authority (HCMA) advertised
proposals to lease two acres within Metro Beach Metropark for
the design, construction, operation, and maintenance of a water
slide. The Attorney General had indicated earlier the belief
that the HCMA did not have the power to lease parkland and
had effectively prevented the construction and operation of an
amusement park at Kensington Metropark. The HCMA filed a
declaratory judgment action in Macomb Circuit Court naming
the Attorney General as defendant and seeking a determina-
tion that it did indeed have the power to lease parkland. The
court, James C. Daner, J., granted declaratory judgment in
favor of defendant, noting that HCMA's statutory powers con-
tain no specific reference to the power to lease, and suggested
that HCMA's only remedy was amendatory legislation. HCMA
appealed. *Held:*

1. The HCMA has been granted authority by the Legislature
to convey fee simple title to parkland. That power includes by
necessary implication the power to convey a leasehold.

2. The proposed lease does not violate the public trust.
HCMA's actions were discreet, well-considered, and in further-
ance of its continuing obligation to provide park facilities.

Reversed and remanded for entry of judgment in favor of
plaintiff.

1. POWERS — HURON-CLINTON METROPOLITAN AUTHORITY — LEASING
OF PARKLAND.

The Huron-Clinton Metropolitan Authority, having been granted
authority by the Legislature to convey fee simple title to
parkland, has also been granted implied authority to lease

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Parks, Squares and Playgrounds §§ 10-15.
See the annotations in the ALR3d/4th Quick Index under Parks
and Playgrounds.
[2] Am Jur 2d, Statutes §§ 258-270.

parkland in furtherance of its continuing obligation to the public to provide park facilities (MCL 119.53; MSA 5.2148[3]).

2. STATUTES — JUDICIAL CONSTRUCTION.
   Statutes should be construed to prevent absurd or illogical results and to give effect to their purposes.

*Miller, Canfield, Paddock & Stone* (by *Larry J. Saylor* and *Noah Yanich),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Stewart H. Freeman* and *Brent E. Simmons,* Assistants Attorney General, for Defendant.

Before:M. J. KELLY, P.J., and MACKENZIE and N. J. KAUFMAN,* JJ.

MACKENZIE, J. Plaintiff appeals as of right from the trial court's denial of declaratory relief in favor of plaintiff and grant of declaratory judgment in favor of defendant. We reverse.

Plaintiff, a metropolitan district covering Macomb, Wayne, Oakland, Washtenaw, and Livingston Counties, incorporated pursuant to MCL 119.51 *et seq.;* MSA 5.2148(1) *et seq.,* has developed a system of parks known as "metroparks". At Metro Beach Metropark, the 748.44-acre park involved in the instant case, plaintiff or its various concessionaires charge fees for use of a golf course, roller rink, boat rides, miniature golf course, tennis courts, binocular viewers, trackless train rides, boat shows, and marinas.

In November, 1979, and January, 1980, plaintiff published advertisements for proposals to lease two acres within Metro Beach Metropark for the design, construction, operation, and maintenance

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

of a water slide, all phases of which would be monitored and controlled by plaintiff. Plaintiff would determine fees charged and would receive as rents a percent of gross revenues. Under a proposed lease agreement, the lessee was prohibited from using the leased land for any purpose other than the water slide without plaintiff's consent. The lessee also promised that the water slide and all improvements would be equally available to all members of the public without discrimination. At the end of the lease term, and an optional renewal period, sole ownership of the facility would pass to plaintiff.

Plaintiff sought a declaration that it had the authority to lease the subject parcel for the construction and operation of the water slide. Defendant counterclaimed, seeking a declaration that plaintiff lacked such authority. The parties have stipulated that the proposed water slide project would be consistent with plaintiff's enabling act and would be lawful if no lease transaction was involved.

The trial court granted declaratory judgment in favor of defendant. Noting that plaintiff's statutory powers contain no specific reference to the power to lease, the court found that plaintiff possessed no such express or implied power. The trial court suggested that plaintiff's only remedy was amendatory legislation.

Plaintiff was formed for the purpose "of planning, promoting, and/or for acquiring, constructing, owning, developing, maintaining and operating * * * parks and/or limited access highways, as well as such connecting drives as may be deemed necessary or convenient to provide access to and betweeen the same". MCL 119.51; MSA 5.2148(1). Plaintiff's statutory powers are set forth at MCL 119.53; MSA 5.2148(3):

"The Huron-Clinton metropolitan authority * * * shall have the power to make plans for and promote, and/or to acquire, construct, own, operate and maintain, within or without the limits of the metropolitan district, parks, connecting drives, and/or limited access highways. Said authority may fix and collect fees and charges for use of facilities under its control, and, for its uses, may sell or purchase lands * * *."

Plaintiff's board of commissioners also has the power to "select and employ such other officers and employees and engage such services as shall be deemed necessary to effectuate its purposes". MCL 119.55; MSA 5.2148(5).

Defendant's position is that plaintiff's powers are strictly limited to those enumerated in its enabling legislation and that under rules of statutory construction no other power may be implied. Plaintiff contends that its power to sell land necessarily includes the power to convey a leasehold.

Plaintiff is a quasi-corporation. See *Huron-Clinton Metropolitan Authority v Bds of Supervisors of Five Counties,* 300 Mich 1; 1 NW2d 430 (1942). Such bodies are not "municipal corporations" in the strict or primary sense, but the term "municipal corporation" may be used in the broad sense to include quasi-corporations or quasi-municipal corporations. See 62 CJS, Municipal Corporation, § 5, pp 74-77. The general rule is that these corporations possess and can exercise only such powers as are granted in express words or those necessarily and fairly implied in or incident to powers expressly conferred by the Legislature. 56 Am Jur 2d, Municipal Corporation, Counties, and Other Political Subdivisions, § 194, p 246. We believe that the power to lease is "necessarily and fairly implied in or incident to" the power to sell granted plaintiff at MCL 119.53; MSA 5.2148(3).

In *Big Prairie Twp v Big Prairie Twp Grange No*

*935,* 286 Mich 268; 282 NW 143 (1938), the parties entered into an agreement whereby the grange would lease a portion of the township hall. The township subsequently brought suit to oust the grange arguing, *inter alia,* that the lease was unauthorized by the township board. The Supreme Court held:

"The township had authority to build a town hall which might be used in all or in part for township purposes. 1 Comp. Laws 1929, § 2366 (Stat. Ann. § 5.2361). A township has authority to purchase and hold real and personal estate, and to convey, alienate and dispose of the same, as well as to make all contracts that may be necessary for the exercise of its corporate powers, and any orders for the disposal of its corporate property which is judged expedient. 1 Comp. Laws 1929, § 957 (Stat. Ann. § 5.2). It follows that the township did have authority to lease that portion of its town hall not necessary for township purposes." 286 Mich 271.

The trial court read *Big Prairie* to hold that the power to lease was authorized by the Legislature in granting the power to erect a town hall to be used in part for township purposes. We cannot read *Big Prairie* so narrowly. While the Supreme Court listed other township powers in adition to the township power to "convey, alienate and dispose" of real property, the fact that this power was listed among the others suggests that the Supreme Court considered such power to be, at least in part, indicative of an implied power to lease. Thus we believe *Big Prairie* at a minimum stands for the proposition that a power to transfer ownership may imply a power to lease.

Foreign jurisdictions which have considered the question have held that the legislative grant to a municipality of power to sell necessarily implies

the lesser power to lease. In *Green v City of Rock Hill,* 149 SC 234, 269; 147 SE 346, 359 (1929), the South Carolina Supreme Court stated:

"[I]f express legislative authority [to lease] be necessary in this case, it is conferred by the terms of the enabling statute * * *, granting the power 'to sell, convey and dispose of.' *That 'a grant of power to sell necessarily carries with it a grant of power to transfer an interest less than an absolute one' would seem to be self-evident."* (Citations omitted.) (Emphasis added.)

In *Abernathy v City of Irvine,* 355 SW2d 159, 160 (Ky, 1961), *cert den* 371 US 831 (1962), the Kentucky Court of Appeals stated: "Broad powers to sell real estate are granted to counties and cities under [the applicable statute], and it is an established principle that the power to sell includes the power to lease". See also *Fayetteville v Baker,* 176 Ark 1030, 1034; 5 SW2d 302, 303 (1928); *Burns v Moore,* 307 Ky 167; 209 SW2d 735 (1948); *Bd of Councilmen of City of Frankfort v Pattie,* 227 Ky 343; 12 SW2d 1108 (1928); *Minamax Gas Co v State ex rel McCurdy,* 33 Ohio App 501; 170 NE 33 (1929).

We agree with these jurisdictions. An estate in fee simple is the largest estate in lands recognized by the law. It consists of the aggregate of all the rights, powers, privileges, and immunities (sometimes called the "entire bundle of rights") pertaining to the land. The power to convey the entire bundle of rights includes by necessary implication the power to convey any lesser segment, or group of segments, of the bundle. Because the power to convey a fee has been expressly granted by the Legislature to plaintiff, it may exercise that power to convey a leasehold.

Defendant does not cite any Michigan or foreign authorities holding that the power to sell does not

include the power to lease. Instead, defendant contends that two rules of statutory consturuction apply here: *"expressum facit cessare tacitum"* (that which is expressed puts an end to or renders ineffective that which is implied) and *"expressio unius exclusio alterius"* (express mention in a statute of one thing implies the exclusion of similar things). While these rules are widely accepted and frequently employed, other rules of construction are more appropriate to the instant case.

Statutes should be construed to prevent absurd or illogical results. *Franges v General Motors Corp,* 404 Mich 590, 612; 274 NW2d 392 (1979). Under the result reached by the lower court and the position advanced by defendant, plaintiff would lack authority to convey lesser interests such as utility rights of way and easements. Clearly, this result was not the Legislature's intent. A statute should also be construed to give effect to its purpose. *Zawacki v Detroit Harvester Co,* 310 Mich 415, 419-420; 17 NW2d 234 (1945). One of the purposes of the act by which the Huron-Clinton Metropolitan Authority was created is the development of parks for recreational purposes. Under the proposed lease transaction, plaintiff would acquire the water slide facility at the end of the lease period without any capital investment and would receive substantial rental revenues in the interim. Clearly, this result is consistent with plaintiff's purpose.

Defendant also argues that under a lease agreement plaintiff would relinquish too much control of public park lands. We disagree. Under the terms of the lease, plaintiff would have the power to control the hours the facility was open and the prices charged. The lessee could not assign, sublet, or encumber the property or change its use without approval. Plaintiff retained the right to ap-

prove the construction and design of the water slide. The lessee covenanted to admit all members of the public without discrimination. Thus, under the instant lease, plaintiff retained paramount control. Moreover, the argument ignores the fact that plaintiff could validly sell the land upon which the slide is to be constructed and thereby relinquish total control.

Finally, defendant argues that the proposed lease violates the public trust. In *Grosse Ile Twp v Dunbar & Sullivan Dredging Co,* 15 Mich App 556, 566; 167 NW2d 311 (1969), *lv den* 383 Mich 756 (1969), this Court held that "[w]hat constitutes a violation of the public trust is necessarily a matter of *ad hoc* judicial determination depending on the facts in a particular case". Defendant has not explained how the public trust is violated when a private lessee, closely monitored by a public agency, performs an admittedly public function. *Curry v City of Highland Park,* 242 Mich 614; 219 NW 745 (1928), upon which defendant relies, involved a sale of public land to private entities for private purposes and therefore is readily distinguishable. A review of the record leaves us with the impression that plaintiff's actions were discreet, well-considered, and in furtherance of its continuing obligation to the public to provide park facilities.

Reversed and remanded for entry of judgment in favor of plaintiff.